DeHATRE et al., Appellants, v. LUCY T. PENN EDMONDS et al.

Division One, December 22, 1906.

1. **LIMITATIONS: Descent Cast While in Adverse Possession.** Where land was inherited by a married woman and was at the time it was inherited by her in the adverse possession of others, the Statute of Limitations began at once to run against the whole estate, both against her and her husband. There were not two estates inherited, one a freehold by him and another a remainder by her; there was only one estate cast, and out of that the law carved a curtesy for him, the title remaining in her, but that the law did not do until descent cast.

2. ———: ———: **Facts Stated.** A testator died in 1857, having by will given land to his daughter Sallie, an insane person, whose husband Thomas soon afterwards conveyed the land to defendant's father, who also about the same time bought the interest of four of Sallie's children, and entered into possession, and he and defendant have ever since been in adverse possession. Thomas died in 1863, and Sallie in 1871, leaving a daughter Martha Ann who had refused to sell her one-fifth interest to defendant's father. Martha Ann was married and had children in 1857 when the will went into effect, and her then husband died in 1901, and she in 1896, and this suit is in ejectment by her children. *Held*, that the Statute of Limitations began to run in 1871, and plaintiffs are barred.

3. ———: ———: **Accrued Right to Sue: Insane Person: Tacking Disabilities.** The right to sue for possession of the land

accrued to Sallie, plaintiffs' grandmother, upon the death of her husband Thomas in 1863, and although the Statute of Limitations did not then begin to run as to her, since she was insane, and although Martha Ann was then a married woman, her disability could not be tacked to the disability of her mother Sallie. There can be no such thing as a cumulation of disabilities.

4. ——: ——: ——: Insane Person: Right of Descendants: Statute: Three Years. The right to sue having accrued to one who was at the time insane, her legal descendants, although laboring under legal disabilities at the time of the death of such insane person, are not protected by the statute (sec. 4265, R. S. 1899). The Statute of Limitations did not run against her, but it did begin to run against her heirs at her death, whether they were under legal disability or not, and unless they began suit within three years after her death (unless the three years would make the time less than ten years after the right to sue accrued to her) they are barred by section 4267, Revised Statutes 1899.

5. ——: ——: ——: ——: Meaning of Statutes as a Whole. Under our Statute of Limitations (secs. 4262, 4265, 4267, R. S. 1899) the right to sue for land is barred in ten years, except as to persons under disabilities mentioned (minority, insanity, imprisonment, marriage), and they are barred in twenty-four years whether disabilities have been removed or not. But if before the twenty-four years have expired the person under disability dies and to whom the right of action first accrued, then his or her heirs can sue within three years after death of such ancestor, but not afterwards, unless such death occurred more than three years prior to the expiration of the ten-year limit, in which event the heir can bring the suit at any time within ten years after the date the right of action first accrued to the ancestor.

6. ——: ——: Thirty-Year Statute: Taxes. Where the right to sue for possession of land patented in 1829 accrued to a person who was then, because of insanity, under legal disability, and thereafter it was not in her possession or that of her daughter who upon descent cast was under legal disability, being a married woman, but was for thirty consecutive years after the right to sue first accrued in the possession of defendant or her ancestor, neither the said daughter nor her ancestor nor her descendants having paid any taxes thereon during that thirty years, the suit of such descendants, if not begun within one year after the expiration of such thirty-year period, is barred, and the title vests in defendant. The disability of the daughter did not relieve her of the duty to pay

the taxes. That duty first devolved on her ancestor, to whom the right to sue accrued. The statute does not make any legal disability an exception.

Appeal from St. Louis County Circuit Court.— *Hon. Jno. W. McElhinney*, Judge.

AFFIRMED.

*O. J. Mudd, Robert Shackelford* and *George W. Wolff* for appellants.

(1) (a) Even if Penn, after death of Tom Withington, held adversely to Sallie Withington, it could not start the running of the statute until Sallie's death, because of her insanity. R. S. 1879, sec. 3222; State v. Macey, 67 Mo. App. 326; Landers v. Perkins, 12 Mo. 259; Burdette v. May, 100 Mo. 19; Quick v. Rufe, 164 Mo. 413; Dessaunier v. Murphy, 33 Mo. 184.  (b) Nor did the appointment of a guardian over Sallie start the running of the statute against her estate. Keeton's Heirs v. Keeton's Adm., 20 Mo. 543; Smith v. Ins. Co., 64 Mo. 330; Lindell R. E. Co. v. Lindell, 142 Mo. 77; Wood on Stat. Lim., secs. 238, 239.  (2) Upon Sallie's death in 1871 she left five children, all of whom but Martha Ann DeHatre had quitclaimed to Dr. Penn. Hence, her real estate devolved as to four-fifths upon Dr. Penn as grantee of the other heirs, and as to one-fifth upon Martha Ann DeHatre, but as Martha Ann at that time had a husband and children born of him, this one-fifth immediately vested in Martha Ann's husband, Antoine DeHatre, for the period of their marriage, and after her death, for his life, remainder over to plaintiffs. And on this state of the title neither Martha Ann, during her life nor after her death plaintiffs, her heirs, became vested with any right of possession or of entry or of action against the disseizor until Antoine's death in January, 1901.

Harris v. Ross, 86 Mo. 100; Dyer v. Witler, 89 Mo. 81; Arnold v. Willis, 128 Mo. 145; Vanata v. Johnson, 170 Mo. 269; Hall v. French, 165 Mo. 438; Lessees of Thompson's Heirs v. Green, 4 Ohio St. 216.  (3)  Nor was such devolution of the title affected by the adverse possession of Dr. Penn.  Beaume v. Chambers, 22 Mo. 54; Stevens v. Chambers, 25 Mo. 325; Harvey v. Wichman, 23 Mo. 115; Martin v. Trail, 142 Mo. 85; Cox v. Boyce, 152 Mo. 576; Arnold v. Willis, 128 Mo. 149; Dozier v. Toalson, 180 Mo. 552.  (4)  The estate and title of Antoine DeHatre was governed by the law as of the date of Sallie's death in 1871, and remained unaffected by subsequent statutes changing the law. Arnold v. Willis, 128 Mo. 145; Vanata v. Jonhson, 170 Mo. 269.  (5)  Until Antoine's death, neither Martha his wife, nor his heirs after her death, could bring any action for possession, because until the termination of the estate of the husband they had no right of possession.  Gideon v. Hughes, 21 Mo. App. 528; Flesh v. Lindsay, 115 Mo. 1; Miller v. Kaessmann, 84 Mo. 330; Bains v. Bullock, 129 Mo. 119; Robards v. Murphy, 64 Mo. App. 90; Vanata v. Johnson, 170 Mo. 269; Lessee of Thompson's Heirs v. Green, 4 Ohio St. 216.  (6) The Statute of Limitations based on adverse possession never runs against persons whose estate does not confer present right of possession and entry.  Harris v. Ross, 86 Mo. 101; Bradley v. Railroad, 91 Mo. 498; Dyer v. Brannock, 66 Mo. 422; Dyer v. Wittler, 89 Mo. 90; Shumate v. Snyder, 140 Mo. 87; Hall v. French, 165 Mo. 442.  (7)  When Sallie died Dr. Penn's adverse possession put the statute to running against Antoine DeHatre, the owner of that estate in the land which carried the present right of possession.  And when continued for ten years from its beginning and three years after Sallie's death, barred his right of entry, destroyed his remedy, extinguished his title, and operated as a transfer of his estate to the disseizor, vesting such es-

tate in the disseizor with like effect as if transferred by deed. Fairbanks v. Long, 91 Mo. 631; Nelson v. Brodhack, 44 Mo. 596; Valle v. Obenhause, 62 Mo. 101; Cunningham v. Snow, 82 Mo. 592; Lessee of Thompson's Heirs v. Green, 4 Ohio St. 216; Kirton v. Bull, 168 Mo. 633; Scannell v. American Soda F. Co., 161 Mo. 618; Ridgeway v. Holliday, 59 Mo. 53; Barry v. Otto, 56 Mo. 177; Dalton v. Bank, 54 Mo. 105; Shepley v. Cowan, 52 Mo. 559; Bank v. Evans, 51 Mo. 346; Boyce v. Railroad, 168 Mo. 583; Stevens v. Martin, 168 Mo. 410; Franklin v. Cunningham, 187 Mo. 184. (8) But such ouster and disseizin of Antoine DeHatre and acquisition of his estate (which was an estate of freehold, *de jure uxoris*), by the operation of the bar of the Statute of Limitations, could not affect the reversionary rights of Martha Ann and her heirs because they had at no time during such running of the statute been invested with any right of possession, and hence no right of entry or action against the disseizor. Tiedeman on Real Property, sec. 65; 1 Washburn, Real Prop. (4 Ed.), sec. 30a, p. 126; 3 Washburn, Real Prop. (4 Ed.), sec. 30, p. 148; Lessee of Thompson's Heirs v. Green, 4 Ohio St. 216; Vanata v. Johnson, 170 Mo. 269; Dyer v. Brannock, 66 Mo. 420; Whitaker v. Whitaker, 175 Mo. 1; Manning v. Coal Cos., 181 Mo. 374; Campbell v. Laclede Gas Light Co., 84 Mo. 377. (9) Any statute which would operate to bar the reversioner or remainderman before the termination of the life estate because such remainderman or reversioner were without right of possession, entry or action, and hence without day in court, would be unconstitutional, null and void. Campbell v. Gas Light Co., 84 Mo. 377; Shumate v. Snyder, 140 Mo. 87; Hall v. French, 165 Mo. 442. (10) The distinction between the tolling of the statute by disabilities in the owner to assert a legal right of possession, and immunity from adverse possession of a claimant whose estate carries no present right of pos-

session without regard to any disabilities of the claimant, is important, and must be kept in view. Dyer v. Wittler, 89 Mo. 90; Hoester v. Sammelman, 101 Mo. 618; Hall v. French, 165 Mo. 441. (11) The provision in the will of Martha Ann DeHatre for her husband, not being in lieu of his curtesy, put him to no election and was not of itself sufficient to affect his life estate. Ball v. Ball, 165 Mo. 312; Graham v. Rosenburgh, 47 Mo. 111; Schorr v. Ettling, 124 Mo. 46. (12) The twenty-four-year statute is not involved because that, by its terms, applies only as against persons who are invested with the right of action but excused from prosecuting this action because of personal disabilities. Its office is to limit the immunity from the effects of adverse possession flowing from the disabilities. It does not fit the facts in this record. Dyer v. Wittler, 89 Mo. 81. (13) The thirty-year statute has no application to the case at bar. (a) Because at any and all times when it might have been invoked Martha Ann DeHatre and her heirs were only reversioners or remaindermen and had no right of action. Hall v. French, 165 Mo. 430. (b) Because the defendants having by adverse possession acquired the life estate of Antoine DeHatre became possessed as life tenants, and the possession of the life tenant is the possession of the remaindermen, and hence the plaintiffs were not out of possession within the spirit and meaning of the thirty-year statute. (c) Because, as life tenants, by operation of the Statute of Limitations, they were bound to pay the taxes, and so there was no failure on the part of plaintiffs or their mother to pay the taxes as contemplated by the thirty-year statute. Hall v. French, 165 Mo. 438; Howell v. Jump, 140 Mo. 457. (d) In order to invoke the thirty-year statute there must be as essential pre-existing conditions, first, the true owner thirty years out of possession; second, right of action in claimants for one year before suit brought.

The earliest date when plaintiffs' predecessors in title may be said to have been out of possession was in 1863, upon the death of Thomas Withington (because Dr. Penn's possession prior to that under grant from the life tenant made his possession the possession of Sallie, the remainderman). And as thirty years from that date, 1893, Antoine DeHatre, the life tenant, still lived and continued to live until one year before the bringing of this suit, plaintiffs and their mother were therefore only remaindermen, and had no right of possession, or right of entry or of action for possession. Shumate v. Snyder, 144 Mo. 88; Hall v. French, 165 Mo. 430; Vanata v. Johnson, 170 Mo. 269.

*W. F. Broadhead* and *W. R. Gentry* for respondents.

(1) The fact that Antoine DeHatre, who was only entitled to a life estate by virtue of his marital rights, became barred and his remedy extinguished by reason of such adverse possession, did not and could not have the effect of transforming at once the hostile, adverse possession of defendants, held and asserted under claim of sole, entire and exclusive ownership and title, into a friendly, subordinate possession held as life tenants under appellants and in privity of estate with them, as in case of a deed; for the effect of adverse possession and lapse of time is to destroy the remedy and extinguish the title of all claimants who are out of possession, and not to transmit title to the adverse holders, but to create and establish in them a complete, full, and absolute legal title by operation of law, as against all hostile claimants who are out of possession, whatsoever interests or titles they may claim. Bank v. Evans, 51 Mo. 347; Berry v. Otto, 56 Mo. 179; Davis v. Thompson, Ib. 39; Dalton v. Bank, 54 Mo. 106, citing 33 Mo. 172; Crockett v. Morrison, 11 Mo. 6; Biddle v. Mellon, 13 Mo. 341; Blair v. Smith, 16 Mo. 280; Cooper v. Ord,

60 Mo. 432; Comstock v. Eastwood, 108 Mo. 47; Gardner v. Terry, 99 Mo. 526; Warfield v. Lindell, 38 Mo. 561; Sherwood v. Baker, 105 Mo. 477; Long v. Kansas City Stock Yards Co., 107 Mo. 304; Stevens v. Martin, 168 Mo. 410; Peck v. Lockridge, 97 Mo. 557; Myers v. Schuchmann, 182 Mo. 177; Reformed Church v. Schoolcraft, 65 N. Y. 134; Butler v. Carpenter, 163 Mo. 604. (2)   Antoine DeHatre, the husband of Martha Ann, having become barred by the adverse possession of George Penn and the defendants, under claim of exclusive, sole, and absolute ownership, long before her death in 1896, and his right of action having been thereby destroyed and all his marital rights and interest in the premises extinguished, then at once, upon her death, if the defendants had not already acquired the full and entire title thereto by the effect of the lapse of time and adverse possession, the plaintiffs became entitled thereto as devisees under the will of the said Martha Ann, and at once upon her death acquired a right of entry and of action, and said premises then being in the lawful possession of defendants and so remaining until this suit was filed in January, 1902, during all of which time the plaintiffs might rightfully claim said premises, if not already barred, and for thirty consecutive years prior to any date of the period from 1896 to 1902, neither the plaintiffs nor anyone under whom they claim or might claim, having been in possession of said premises or paid any taxes thereon and the title having emanated from the Government in 1829, and the plaintiffs not having brought their action to recover the same until 1902, they are barred under the provisions of section 4268, Revised Statutes 1899. Peck v. Lockridge, 97 Mo. 557, and the other cases of like effect cited above.   (3)   There was no estate by curtesy in Antoine DeHatre after the death of his wife, for the further reason that Martha Ann, his wife, by her last will, gave to him for life her homestead farm,

and other specific bequests, and at the same time, subject to the bequests and provisions made in said will for her husband, she gave all the balance of her estate, which necessarily includes all the interest she may have then had in this land, to her children in equal, undivided portions; he could not have curtesy therein except against the provisions of the will, which gave the whole of the residue to the children; he could not take both under and against the will, but was put to his election as the intent to exclude him from any interest in such residue is manifest; and no rejection of the will appearing, he is presumed to have accepted its provisions, and thus to have relinquished his claim to curtesy. Hence, if this point be well taken, then, by reason of the facts stated in point 2, the plaintiffs, if not then already barred by adverse possession and lapse of time, became barred under the thirty-year statute, section 4268, Revised Statutes 1899. Requa v. Graham, 52 L. R. A. 641, citing Bank, etc., v. Chambers, 96 Mo. 549; Fox v. Windes, 127 Mo. 502; Ball v. Ball, 165 Mo. 326; King v. King, 184 Mo. 108; Davidson v. Davis, 86 Mo. 442; Schorr v. Etling, 124 Mo. 46; Burgess v. Bowles, 99 Mo. 548. (4) In applying the Statute of Limitations in case of disabilities, "the saving clause only extends to the person on whom the right of action first decends or to whom the cause of action first accrues;" in this case the cause of action first accrued to Sallie Withington, upon the disseizin and adverse possession by George Penn becoming complete as against her in 1866, while she was under the disability of insanity, and so continued until her death, in 1871, upon which event her title to the fee descended to her daughter, Martha Ann DeHatre, then under the disability of coverture, which continued until her death in 1896; the disability of the latter cannot be added to the disability of Sallie, her mother, and thus postpone indefinitely the operation of the statute, and defeat its purpose. Burdett v.

May, 100 Mo. 19; Williams v. Dougan, 20 Mo. 189;
Cunningham v. Snow, 82 Mo. 587; Billow v. Larrimore,
37 Mo. 375; Desaunier v. Murphy, 33 Mo. 184; Keeton's
Heirs v. Keeton's Admr., 20 Mo. 543; Gordon v. Lewis,
88 Mo. 381; Wilkinson v. St. Louis Sectional Dock Co.,
102 Mo. 141; Pim v. St. Louis, 122 Mo. 666; Quick v.
Rufe, 164 Mo. 410; Franklin v. Cunningham, 187 Mo.
196; Griswold v. Butler, 3 Conn. 227; Thorp v. Ray-
mond, 57 U. S. 247; Miller v. Railroad, 132 U. S. 662;
South's Heirs v. Thomas's Heirs, 23 Ky. 59; Down-
ing's Heirs v. Ford, 39 Ky. 391; Ashbrook v. Quarles,
54 Ky. 20; Mitchell v. Berry, 58 Ky. 602; Carpenter
v. Schemerhorn, 2 Barb. (N. Y.), 314; Ridley v. Het-
man, 10 Ohio 524; Whitney v. Webb, 10 Ohio 513; Clark
v. Ross, 2 R. I. 440; Floyd's Heirs v. Johnson, 12 Ky.
109; Damerest v. Wynkoop, 3 Johns. Ch. 129; Bunce v.
Wolcott, 2 Conn. 36; McDonald v. Hovey, 110 U. S. 621;
Davis v. Koblens, 174 U. S. 719; East Tenn. Iron &
Coal Co. v. Wiggin, 66 Fed. 446; Stowell v. Zouch,
Plowden's Rep. 533; Tyler, Eject. & Adv. Pos., pp.
931, 932, 933; see also, Robinson v. Allison, 192 Mo.
366; see, also, section 4267, Revised Statutes 1899,
quoted in said decision, and held to be decisive of the
question. This same section was in force in the Re-
vised Statutes of 1855 (p. 1046, sec. 6), before Dr. Penn
first laid claim to the land, and has been in force con-
tinuously ever since. It is found in G. S. 1865, page
746, section 6, in Revised Statutes 1879, section 3224,
in Revised Statutes 1889, section 6769; the same pro-
vision was in force many years prior to 1855, but al-
lowed more than three years; since 1855, however, it
has remained unchanged to the present day.

GRAVES, J.—Action in ejectment by plaintiffs
against defendants upon petition in ordinary form.
Answer was a general denial. Cause tried before the
court, jury having been waived. The court, upon re-
quest in writing, made a written finding of facts, and

filed the same, to which no exceptions were saved by either side. Upon this finding there was judgment for defendants, and plaintiffs appeal.

The findings of facts are quite long, but no doubt as short as could be made under the facts in evidence. This finding is as follows:

"A request in writing having been made that the court shall state in writing the conclusions of fact found separately from the conclusions of law, the court finds the facts herein as proven by the evidence to be as follows:

"A portion of the premises in controversy lies in U. S. Survey No. 729, and the remainder in fractional section 10 and the northwest fractional quarter of section 11, all being in township 45, range 6, in St. Ferdinand township, in St. Louis county, Missouri.

"Letters patent from the United States Government to Francis McNutt were issued May 24, 1824, conveying to him the said lands in sections 10 and 11.

"It is admitted by the parties that the title to all the premises in controversy emanated from the United States Government prior to the year 1829.

"There is no evidence tending to show how the said Francis McNutt or his daughter Sallie Withington or her husband acquired the title from the United States Government to the said land lying in Survey No. 729.

"On the 11th day of February, 1829, the said Francis McNutt, of the township of St. Ferdinand and county of St. Louis, Missouri, made and executed in due form of law his last will and testament, by the terms of which he gave to his wife Martha McNutt, during her lifetime, the farm on which he then lived consisting of one hundred and eighty acres. And by a later provision he gave to his daughter Sallie, after the death of his wife Martha, 'eighty acres of land, together with the improvements thereon, being part of

the farm (the northeast) on which I now reside, and the improved part thereof.' This daughter Sallie married Thomas Withington and was the mother of the five children of said Thomas hereinafter mentioned. The precise date of the death of Martha McNutt, the wife of Francis McNutt, does not appear from the testimony, but it is agreed between the parties that she died prior to 1857. The said will of Francis McNutt was duly probated in the proper office of probate of the county of St. Louis on the 23d day of March, 1829.

"The premises in controversy are part of a larger tract of land containing by survey 86.81 acres, all of which was on the 30th day of June, 1857, and for many years prior thereto, in the possession of said Thomas Withington, who, with his wife Sallie, and his children, lived on or in the near neighborhood of the premises, and for some years prior to the last-mentioned date rented the premises to a tenant.

"On the 30th day of June, 1857, Thomas Withington duly executed, acknowledged and delivered his quitclaim deed, a copy of which is in evidence and is here referred to and made a part hereof, purporting to convey unto George Penn of the county of St. Louis, who was the father of the defendant Lucy T. Penn Edmonds, the said larger tract of land fully describing the same therein and also describing the said land in the said deed as 'the whole of said tract containing eighty acres, more or less, being part of a tract of land sold by James Mackay to Francis McNutt, and the same tract of land devised by will of the said Francis McNutt to his daughter Sallie Withington.' This deed was not joined by Sallie Withington, the wife of Thomas, but was executed by him alone. The consideration mentioned in the deed was the sum of $320.

"At the time of the execution of this last-mentioned deed Thomas Withington and his wife, the said Sallie Withington, daughter of Francis McNutt, had

living five children, to-wit: Nancy, wife of Edward
James, George Withington, Louis F. Withington, Wil-
liam Withington and Martha Ann DeHatre, who was
married to Antoine DeHatre, by whom she then had
living a number of children.

"On the 12th day of August, 1857, three of the five
children of Thomas Withington and Sallie Withing-
ton, his wife, to-wit, Nancy James, George Withington
and Louis F. Withington, made, executed and delivered
in due form of law a deed, a copy of which is in evi-
dence and is here referred to and made a part hereof,
purporting thereby to convey to said George Penn, for
a consideration of $960, three undivided fifths of the
said larger tract of land, describing it in the deed the
same as in the deed first mentioned from Thomas
Withington to George Penn, a part of which said de-
scription is 'the whole of said tract containing eighty
acres, more or less, being part of a tract of land sold
by James Mackay to Francis McNutt, and the same
tract of land devised by said Francis McNutt to his
daughter Sallie Withington.' Said deed also purport-
ed to convey to said George Penn 'all the right, title,
claim and interest of the said Sallie Withington in
and to the said undivided three-fifths part of the said
tract or parcel of land.' And in said deed the grantors
covenanted to warrant and defend the title to said
premises therein conveyed to said George Penn, his
heirs and assigns, against the claims of said grantors
and all persons claming by, through or under them,
'and against the claim or claims of the said Sallie
Withington and all or every person or persons claim-
ing or to claim the same by, through or under her,
but not against the claim of others not so claiming or
deriving title.' (Said covenant with the granting
clauses of said deed are more fully set out in said deed,
and are here referred to).

"Both of said deeds, that is to say, the said deed

from Thomas Withington to George Penn, and the said deed from Nancy James, George Withington and Louis F. Withington to George Penn, were recorded August 12, 1857.

"On the 12th day of March, 1859, William Withington, a fourth of the children and heirs of Thomas Withington and Sallie Withington, made, executed and delivered in due form of law his quitclaim deed, a copy of which is in evidence and is here referred to and made a part hereof, purporting thereby to convey unto the said George Penn an undivided fifth part of the said larger tract of land, describing it similarly to the description in the two before-mentioned deeds, and containing in the descriptive part of the deed, like the other two deeds, the following: 'The whole of said tract containing eighty acres, more or less, being part of a tract of land sold by James Mackay to Francis McNutt, and the same tract of land devised by said Francis McNutt to his daughter Sallie Withington.' Said deed also purported to convey to said George Penn 'all the right, title, claim and interest of the said Sallie Withington in and to the said undivided one-fifth part of said tract of land.' And in said deed the said grantor, William Withington, covenanted to warrant and defend the title to said land and premises therein conveyed to said George Penn, his heirs and assigns, against the claims of said grantor and all persons claiming by, through or under him, 'and also against the claim or claims of the said Sallie Withington and all and every person or persons claiming or to claim the same by, through or under her, but not against the claim of others not so claiming or deriving title.' (Said covenant with the granting clauses of said deed are more fully set out in said deed, and are here referred to.)

"Sometime during the year 1865 George Penn, together with a justice of the peace, came to the resi-

dence of Martha Ann DeHatre with a deed for said Martha Ann to sign and execute. He stated to the said Martha on said occasion that he had agreed with Antoine, the husband of Martha Ann, as to the price of her undivided fifth prospective or expected interest in the land, Antoine being at the time present, but Martha Ann declined and refused to sign the deed, stating to said George Penn that she was not satisfied with the price and would not sell or sign and execute the deed. There is no evidence of any other or further negotiations by the said George Penn with the said Martha Ann DeHatre or her husband concerning the said premises.

"No evidence was adduced tending to show any title in Thomas Withington to the lands described in his deed to Penn other than that derived as tenant by curtesy initiate or otherwise as the husband of Sallie Withington, and the court finds that the parties plaintiff and defendant under the evidence claim only through the will of Francis McNutt and the title of Sallie Withington derived through that will, and so claim through a common source of title.

"Upon receiving the said two first-mentioned deeds to him, the said George Penn, in the year 1857, took possession of all that portion of said larger tract of land lying north of the Old St. Charles Road, being the premises here in controversy, from one William H. Blackwell, who had theretofore occupied the same as the tenant of said Thomas Withington. At that time a portion of about thirty-five acres was in actual use and cultivation. This portion the said George Penn took actual charge of, and he inclosed it with a fence, erected a dwelling house and other improvements upon it, and planted fruit trees upon it and used it as an orchard. He then placed a tenant upon the same, and left it in the possession of his tenant.

"Afterwards in the year 1866, the said George

Penn caused a fence to be erected enclosing the entire premises in controversy, and thereafter all the same was continuously held, occupied and used as a farm by a tenant or tenants of said George Penn, until the time of his conveyance to trustees of his daughter Lucy T. Penn, hereinafter mentioned, in the year 1869, and during all said period, from 1866 to the time of said conveyance in 1869, all of the said premises were so enclosed and in the actual, open, notorious and exclusive possession of the said George Penn, by and through his tenants, who were in actual use and occupation of the same. And during all of said time the said George Penn exercised all the usual acts of ownership over all said premises, and took and appropriated to his own exclusive use all the rents and profits thereof, without accounting or offering to account to any person for the same or any portion thereof; and during all said time said possession was held and all acts done under claim of title and exclusive ownership of said premises as against all persons, by the said George Penn, and the said acts of possession and claim of exclusive ownership were, during said period, inconsistent with the ownership of any interest therein by any other person or persons, and were so unequivocal, open and notorious and of such a nature as to impart notice to all other persons claiming such premises or any share or interest in the same, that such possession and claim of ownership were adverse to them and were had and made with the intent on the part of said George Penn to permanently dispossess all other persons than himself of said premises and all interests therein. And during all of said time the said Sallie Withington resided within a few miles of the said premises, and if of sound mind and exercising ordinary care over the said premises, would have known of such possession and claim of exclusive ownership and that the same was intended to be adverse and to permanently dis-

possess her of her title and ownership of said premises.

"On the 1st day of September, 1869, George Penn, by his deed duly executed, offered in evidence and here referred to and made a part hereof, for and in consideration of one dollar and love and affection, did 'sell, convey and give' to Crawford E. Smith and George Penn, Jr., trustees, for the benefit of Lucy T. Penn, the premises in controversy, reciting in the deed that the land conveyed was a part of a tract of land bought of Thomas Withington. This deed was recorded the day of its execution. But no change was made in the occupancy and possession of the premises until the early part of the spring of 1873, except as follows: The said George Penn from the said 1st day of September, 1869, until said Lucy T. Penn Edmonds and her husband took possession thereof in the spring of the year 1873, held possession of all the said premises in the same manner, having the same enclosed and used as a farm in the same manner, and exercising the same acts of ownership over the same as theretofore, and claiming the same not as his own, but as the exclusive property of his daughter, the said Lucy T. Penn, under his said deed to her, but without rendering any account to her or any one else for the rents and profits thereof. During said period the said Lucy T. Penn was residing with said George Penn as a member of his family and was supported and maintained by him. In the year 1872 the said George Penn erected upon said premises a dwelling house for his said daughter Lucy T. Penn. During all said period, from the time of said conveyance to Lucy T. Penn until the spring of 1873, the said acts of possession and claim of exclusive ownership for said Lucy T. Penn were of the same nature as during the said period from 1866 to 1869 and were so unequivocal, open and notorious, and of such nature, as to impart notice to all other per-

sons claiming said premises or any share or interest in the same that such possession and claim of ownership were adverse to them and were had and made with the intent on the part of the said George Penn to dispossess all other persons than himself and the said Lucy T. Penn and her husband and trustees of said premises and all interests therein. And during all said time the said Sallie Withington and her guardian Edward James and the said Martha Ann DeHatre and her husband resided within a few miles of the said premises, and if of sound mind and exercising ordinary care over the said premises and their interests in the same, they would have known of such possession and claim of exclusive ownership and that the same was intended to be adverse and to permanently dispossess them of their interests in said premises.

"In the early spring of 1873 the defendant Lucy T. Penn Edmonds married the defendant Ben Edmonds and they then moved upon the premises in controversy, took actual possession of the same, and have from then until the bringing of this suit continuously held exclusive possession and occupancy of the premises, using the same without accounting to anyone for any portion of the rents, profits or the usufruct of the premises. Such possession of Mr. and Mrs. Edmonds has at all times been actual, open and notorious and under claim of exclusive ownership adverse to all persons, and their said possession and claim of ownership have been at all times of such nature as to impart notice to all other persons claiming said premises or any share or interest therein that said possession and claim were adverse to them, and the said Martha Ann DeHatre and her husband and children, in the exercise of ordinary care over their interests in said premises, would have known of such possession and claim of exclusive ownership.

"At the time of executing said deed to trustees of

his daughter, Lucy T. Penn, on the 1st day of September, 1869, the said George Penn also duly executed his deed of that date, which is referred to and made a part hereof, for and in consideration of one dollar and love and affection, and by said deed did 'sell, convey and give' to his daughter, Virginia P. Smith, the balance of said larger tract of land, being the portion thereof lying south of the said Old St. Charles Road, to have and to hold 'free from the claims of the party of the first part and from the claim or claims of all persons whomsoever.' Said deed was acknowledged and duly recorded on the 13th day of September, 1869.

"No child was ever born of this marriage of the defendants Edmonds.

"From a time shortly after the said George Penn took possession of said portion of said larger tract in the year 1857, at least from the year 1861 or 1862, the whole of said larger tract was assessed for taxes in the name of said George Penn down to and including the taxes of 1869, and thereafter the said premises here in controversy have been assessed for taxes in the name of Lucy P. Edmonds.

"After taking possession in 1857, at least from the year 1862, George Penn paid the taxes on said premises continuously until the year 1877, and from that time until the beginning of this suit, the taxes were paid by the defendant Lucy Penn Edmonds. And there is no evidence that anybody else during this time paid any taxes.

"The said Thomas Withington died in the year 1863.

"In 1870, in appropriate proceedings in the probate court of the county of St. Louis, Sallie Withington was declared an insane person, and on March 30, 1870, Edward James was duly appointed her guardian. During the year 1871 Sallie Withington died. Sallie Withington, at her death was, and for many years dat-

ing back prior to 1854, had been an insane person and incapable of transacting business. Upon the death of said Sallie Withington in 1871, she left surviving her as one of her heirs, Martha Ann DeHatre, who was at the time living in lawful wedlock with her husband Antoine DeHatre, and had by him living a number of children, some of whom were at the time twenty years or more of age. The other heirs of Sallie Withington were her children, the said Nancy James, George Withington, Louis F. Withington and William Withington.

"The plaintiffs in this cause are the heirs at law of Martha Ann and Antoine DeHatre. Martha Ann departed this life on the — day of January, 1896, leaving surviving her, her husband, Antoine DeHatre, and plaintiffs as her heirs at law, and also leaving a last will and testament duly executed and probated, in which she gave to her husband, Antoine, a life estate in a tract of land then used by them as a homestead. In the will no specific reference is made to the particular premises in controversy, neither is the provision for Antoine DeHatre, her husband, expressed to be in lieu of his curtesy interest in her estate, but no reference is made in the will to the curtesy estate of the husband, Antoine DeHatre, or any release or relinquishment of the same. A copy of said will is in evidence and is here referred to and made a part hereof.

"Antoine DeHatre, the husband of Martha Ann, died January 4, 1901, within one year next before the filing of this suit.

"Neither the plaintiffs, nor any one through whom they derive their record title, have been in actual possession of the premises in controversy since 1857."

From this finding of facts let us sift out the real questions for determination. That Sallie Withington, in 1857, the date of the death of her mother, acquired this land by the will of her father, Francis McNutt,

stands conceded; that she was insane from 1854 to 1871, the date of her death, is conceded; that at the death of Sallie Withington, Martha Ann, her daughter, being one of five children, was married to Antoine DeHatre, is conceded; that Martha Ann DeHatre, mother of the plaintiffs and through whom they claim title to one-fifth interest in the lands in controversy, died in 1896, is conceded; that her husband Antoine survived her and did not die until 1901, "within one year next before the filing of this suit," is conceded; that the defendant and her father had the exclusive, open, notorious and adverse possession of the land since 1866, claiming the whole thereof and all interest therein, is conceded. Under the facts, plaintiffs say, through their mother, who refused to deed her one-fifth interest in said land to Dr. Penn in 1863, they are entitled to this one-fifth interest. Defendants say the once valid title of Martha Ann DeHatre has vested in them by the Statutes of Limitations.

Upon the death of Sallie Withington, in 1871, respondents claim and the lower court held, that the Statutes of Limitations began to run against both Antoine DeHatre and his wife Martha Ann. Respondents concede that whilst the right of entry accrued to Sallie Withington in 1866, yet, she being insane, the running of the statutes would not begin until her death in 1871, but urge that it did run then as to all parties claiming any right or interest through Sallie Withington.

On the other hand, appellants claim that upon the death of Sallie Withington, one-fifth of her estate, the part which would be coming to Martha Ann DeHatre, immediately vested in Antoine DeHatre, her husband, for the period of their marriage, a freehold estate, *de jure uxoris*, and then after her death, a consummated curtesy estate for his life, with remainder upon his death, in these plaintiffs, and at no time did Martha Ann DeHatre or these plaintiffs have any right of entry

until the death of Antoine DeHatre, and that while the statute did run as to the estate or interest of Antoine DeHatre, it could not run as against plaintiffs or their mother, for the reason that at no time were they or either of them entitled to possession or to bring suit for possession and thus assert their title.

Defendants further contend that to permit plaintiff's contention to prevail would be to tack the disability of the coverture of Martha Ann DeHatre to the disability of the insanity of Sallie Withington, and thus defeat the running of the statute by tacking disabilities. Plaintiffs say there is no tacking of disabilities, for the reason that upon the death of Sallie Withington in 1871, the law created two estates, separate and distinct, the one, a freehold in Antoine DeHatre, the other, an estate in remainder, either in the wife Mary Ann, or if she died before Antoine, as she did, then in her children, the plaintiffs. That the law which thus carved out two estates in the premises upon the death of Sallie Withington, gave no right of entry and no right of action for possession, to the remaindermen, hence the statute could not run and did not run.

These are the questions suggested by this record.

I. It is conceded that the Statute of Limitations began to run against some person and some estate in this land upon the death of Sallie Withington in 1871. The question is, against what person and what interest or interests did it run? Appellants say, only as against Antoine DeHatre and his interest in the lands. Had Martha Ann been single at the death of her mother, Sallie Withington, there would be no question that the statute would have run against all persons and all interests in the land, and her subsequent marriage would not have effected the running of the statute. Now, does the fact that she was married at the date of her mother's death, change the situation? Plaintiff says it does for the reason that when the estate of Sallie With-

ington was cast, it was by law divided into two estates, the one of possession, a freehold estate *de jure uxoris*, and the other a remainder in the wife, or in the event of her death before the husband, in their children.

Is this position tenable? We think not. No estate descended from Sallie Withington, at her death, to Antoine DeHarte. He was not an heir or descendant within the meaning of the law. The whole estate, so far as the one-fifth interest of the land involved in this case, descended to Martha Ann DeHatre, the daughter of Sallie Withington. What rights Antoine acquired were rights acquired through the wife by reason of the marriage. The estate of the husband is a freehold estate, less than the fee, which the law carves out of the whole estate, leaving an estate in remainder. But before the carving process begins there must be an estate in fee in the wife. In other words, before there can be a division of the estate, the whole estate must be in the wife.

By descent the whole estate did pass to the wife in this instance, and thereupon the law divided it as above indicated. Because it was simultaneously done, can make no difference. No interest, under the law of descents and distributions, could go to the husband. The whole went to the wife and the law immediately carved out the estate of the husband. But when the whole estate did go to and vest in the wife, at the same instant, and before the law carved out of it the husband's estate, it became impressed, as a whole, with whatever outstanding interests, if any, might be in embryo, by reason of the effect of the Statute of Limitations, which statute was fully effective and began to run the instant Sallie Withington drew the last breath of life. In our opinion the whole estate became thus impressed with the statute at that instant and it had more than fully run, long prior to the institution of this suit. Counsel for appellant makes a learned argu-

ment to the effect that the statute could not run against Martha Ann DeHatre because, when the estate was cast, the husband took a freehold estate and the wife a remainder, and the husband having the sole right of possession, he alone could sue for the possession, and the right of the wife to sue could not accrue until the death of the husband. This proposition in cases where the law has carved out two estates from the whole, prior to the time the Statute of Limitations began to run, might be conceded and yet not affect the result in this case. For instance, A marries B. At the date of the marriage or thereafter the wife was or became possessed of real estate. By operation of law the two estates were created, the freehold in the husband and the remainder in the wife. Thereafter the Statute of Limitations began to run by reason of adverse possession. In such case, for the purpose of the case at bar, it might be conceded that it would not run as to the remainderman, and yet such concession would not affect the question in hand. However, we are not passing upon the supposed case. In the case at bar the whole estate had to first pass to the wife, for only through her and the marriage relation does the husband acquire any interest. When it did so pass, it was thoroughly infected by the poison, if such it should be called, of the Statute of Limitations, and this virus went to the whole estate, and not simply to the portion thereof, afterwards, by operation of law, carved out and set apart to the husband.

Had Martha Ann been single, and had the whole estate then been cast upon her, there would be no question as to the running of the statute, notwithstanding, within five minutes thereafter, she had married and by virtue of the law the husband had acquired the freehold estate, and thereby the sole right of possession. The fallacy of plaintiffs' argument lies in the fact that they overlook the point that the whole estate by descent is cast upon the wife, and when cast it is infected

with the virus of the statute and the statute having begun to run as to the whole estate, no subsequent carving up of the estate, either by deed or operation of law, can stop the running of the statute. This is true because the right to sue did not first accrue to either Mr. or Mrs. DeHatre, but to Sallie Withington. Although the carving of the estate by operation of law and the beginning of the statute to run be simultaneous, yet, in law, the whole estate must first pass to the wife, before, by operation of law, the division thereof can take place, so that in law, the division of the estate into a freehold estate, less than a fee and a remainder, is, after the casting of the whole estate, and after the statute begins to run, although all do arise from one event, the death of the ancestor of the wife. Under sections 4265 and 4267, Revised Statutes 1899, the fact that Mrs. DeHatre was married at the date of the casting of the estate, does not change the situation, unless it be changed upon the theory contended for by plaintiffs just above discussed. Her disability cannot be tacked to the disability of her mother, the right to sue having been first cast upon the mother. [Dessaunier v. Murphy, 33 Mo. l. c. 192; Robinson v. Allison, 192 Mo. 366; Gordon v. Lewis, 88 Mo. l. c. 381.]

In the Dessaunier case it is said: "The disabilities set up by the plaintiffs were that Emily and Margaret were, when Cozens took possession of the land, married women. Those disabilities ceased when they ceased to be married women, and no other disabilities could be tacked to or cumulated upon these. As to the plaintiff Emily, when her husband Gagnon died, the Statute of Limitations began immediately to run against her and never afterwards ceased. As to Margaret, immediately upon her death the statute began to run against her representatives, without regard to any disabilities under which they might be, for this would be in effect a cumulation of disabilities."

And, further, our court, in Gordon v. Lewis, supra, says: "In the cases of Dessaunier v. Murphy, 33 Mo. 184, and Billon v. Larimore, 37 Mo. 375, it is held that when a disability exists at the time the cause of action accrued, when that disability is removed, another disability cannot be tacked onto it. In the first case cited the wife was under disability of coverture when the cause of action accrued. She died, leaving her husband living, and it was held, 'that immediately. upon her death the statute began to run against her respresentatives without regard to any disabilities under which they might be, for this would in effect be a cumulation of disabilities.' "

We therefore conclude that the Statute of Limitations as to the whole estate began to run in 1871, and had fully run long prior to the institution of this suit, which not only bars the right of action of the plaintiffs, but further vests title in defendants.

II.   Plaintiffs rely upon the case of Lessee of Thompson's Heirs v. Green, 4 Ohio St. 216, and the approval of the doctrine announced in that case by our court in the cases of Dyer v. Wittler, 89 Mo. 81, and Arnold v. Willis, 128 Mo. l. c. 151. All these cases are different from the one at bar. In the case at bar the right to sue first accrued to Sallie Withington in 1866, but she being insane, the Statute of Limitations did not run as against her. She was the party protected by section 4265 of our statute on account of her disability. The right having first accured to her the lineal descendants are not protected by the statute, although they were laboring under disabilities at the time the right of action accrued to them. [Dessaunier v. Murphy, 33 Mo. 184; Billon v. Larimore, 37 Mo. 375; Campbell v. Laclede Gas Light Co., 84 Mo. 352; Burdett v. May, 100 Mo. l. c. 19; Robinson v. Allison, 192 Mo. 366.]

Under the facts in this case their rights are fixed by section 4267, which gives them a right to sue within

three years after the death of the person to whom the
right first accrued and not thereafter.  In this section
there is no exception as to persons suffering from dis-
abilities.  In fact, the purport of the section is to bar all
actions by any person, if brought more than three years
after the death of the person suffering from some dis-
ability mentioned in section 4265.  This section reads:

"If any person entitled to commence such action
or to make such entry die during the continuance of any
disability specified in section 4265, and no determina-
tion or judgment be had of the title, right or action to
him accrued, his heirs, or any person claiming from, by
or under him, may commence such action or make such
entry after the time in this article limited for that pur-
pose, and within three years after his death, but not
after that period."

In case of Robinson v. Allison, 192 Mo. l. c. 376,
MARSHALL, J., says:

"As to the interest acquired by the plaintiff by
the descent from her mother, section 4267, and not
4265, applies, for the plaintiff claims through her
mother by descent cast upon her mother by the death
of her half-brother Kidwell.  Kidwell died in Octo-
ber, 1884, and the plaintiff's mother died in 1893.  Kid-
well, therefore, was entitled up to the date of his death,
which occurred during his minority, to all the benefits
conferred by section 4265, but the benefits thus con-
ferred upon Kidwell by the statute are not by statute
conferred upon plaintiff's mother.  Plaintiff's mother
was only entitled to the benefits conferred by section
4267.  Under that section, Kidwell having died while
under disability, and there having been no determina-
tion of his rights, his heirs (John West and Clara
West) were only entitled to commence an action or
make an entry within three years after his death, and
not after that period.  Such an action under that sec-
tion could only have been instituted prior to October,

1887. The fact that at the time the right of action of Clara West and John West accrued by virtue of the death of Kidwell, they were also under twenty-one years of age, did not entitle them, or either of them, to the benefits of section 4265. For section 4267 does not extend the benefits of section 4265, which were enjoyed by Kidwell, to either the plaintiff or her mother, but expressly limits their rights to bring an action to a period not exceeding three years after Kidwell's death; and this is true, even though they were laboring under disabilities.''

Of course, if the limit of three years named in this section added to the time already run from the date of the accrual of the right to sue, would make the time less than the ten years named in section 4262, the party would have the full ten years given by that section but no more. On the other hand, if the three years served to extend the ten years, the party entitled to sue would have the full benefit of the three years, but no more. [Gray v. Yates, 67 Mo. 1. c. 602.]

But going back to the distinction to be drawn as to the cases relied upon by plaintiffs. In the Ohio case, supra, the agreed statement of facts shows that the woman was a married woman when the adverse possession began and her right of action first accrued. In the case at bar the right of action accrued to the ancestor, and the Statute of Limitations was held in abeyance on account of insanity. Again, in the Dyer case, supra, the whole estate had been cast upon the wife several years before the adverse possession began.' When it was cast the law carved out two estates. These two estates had existed several years prior to the adverse possession, and of course prior to the accrual of the right to sue. When the right to sue for possession accrued, and thereby the statute began to run, the husband was entitled to the possession and the wife was not so entitled, and our court so held. The right of

200 Sup.—18

action for possession first accrued to the husband. But that is not the case at bar. Here the right first accrued to the ancestor of the wife, then under a disability. The same distinction exists as to the other cases relied upon by the plaintiffs.

Section 4262 of our Statute of Limitations limits the right to sue for possession of real property to ten years, with no exceptions or saving clauses as to any person. Section 4265 contains the saving clause or exceptions and provides that if the party entitled to sue under section 4262 is a minor, insane, married or imprisoned for a term less than life, the time during which the disability exists shall not be considered a portion of the time limited in section 4262, but limits the time of bringing the action to twenty-four years, even where there are disabilities unremoved.

This limit of twenty-four years would always remove the disability of minority, but not necessarily the other disabilities. Section 4267, quoted above, in plain language limits the right of the heirs of one upon whom the right to sue first falls, to three years. This section has no saving clause as to disabilities. So that under our statutes the right to sue is barred in ten years, except as to persons suffering from disabilities specifically mentioned, and they are barred in twenty-four years whether disabilities have been removed or not. But if before the twenty-four years expires the party under disability dies and to whom the right of action first accrued, then his or her heirs can sue within three years after death of the ancestor, but not afterwards, unless such death occurs more than three years prior to the expiration of the ten-year limit, in which event the heir could bring the suit at any time within ten years from the date the right of action first accrued to the ancestor. [Robinson v. Allison, supra, and Gray v. Yates, supra.]

In this case the limit of twenty-four years from

the time the right of action accrued to Sallie Withington expired in 1890, more than ten years before this suit was brought. So that under either or all of these several sections, this action is barred.

III. Not only is plaintiffs' right of action barred by the statutes heretofore discussed, and title to the property vested in defendants by such statutes, but in our judgment, under the facts in this case, defendants have acquired title under and by virtue of section 4268, which is as follows:

"Whenever any real estate, the equitable title to which shall have emanated from the Government more than ten years, shall thereafter, on any date, be in the lawful possession of any person, and which shall or might be claimed by another, and which shall not at such date have been in the possession of the said person claiming or who might claim the same, or of any one under whom he claims or might claim, for thirty consecutive years, and on which neither the said person claiming or who might claim the same nor those under whom he claims or might claim has paid any taxes for all that period of time, the said person claiming or who might claim such real estate shall, within one year from said date, bring his action to recover the same, and in default thereof he shall be forever barred, and his right and title shall, *ipso facto,* vest in such possessor: Provided, however, that in all cases such action may be brought at any time within one year from the date at which this article takes effect and goes into force."

Under the facts the equitable title emanated from the Government prior to 1829, more than the ten years mentioned in the statute; the lawful possession was in defendants and had been in defendants and their grantor since 1866; that the land might have been claimed by Sallie Withington, grandmother of plaintiffs and through whom they claim as early as 1866,

and perhaps since 1862; no taxes were paid by Sallie Withington or any one claiming under her during all this time from 1866 to 1902; no action was brought by Sallie Withington or any one claiming under or through her until the present suit within a year after January 4, 1901. If Sallie Withington owned this land, it was her duty to pay taxes. Her insanity did not relieve her of this duty. Then from 1866 to 1871, the date of her death, she, having the absolute title, was in law bound to pay the taxes. This she did not do. Her husband had died previous to 1866, but after having made a deed to defendants' grantor. In this deed he was not joined by his wife, Sallie, and of course only conveyed a life estate. With his death this life estate terminated, and Sallie Withington became the sole owner in fee simple.

Plaintiffs claim that upon the death of Sallie Withington, the duty of paying taxes devolved upon Antoine DeHatre, and for that reason the statute cannot be invoked. They overlook the fact that the first duty was upon their grandmother, under whom they claim. We do not say that the payment of taxes by a life tenant for thirty-one years would affect the rights of remaindermen, nor the failure of remaindermen to pay taxes for that period, when the duty devolved upon the life tenant to pay them, would affect their rights. We are not passing upon that kind of a case and are expressing no opinion on such a case. It will be time enough to discuss that proposition in a case where it is a live issue.

But in this case, the duty first devolved upon the ancestor of Martha Ann DeHatre. Upon the death of this ancestor, in a case of this kind, does the disability of Martha Ann relieve her of the duty to pay taxes? In Collins v. Pease, 146 Mo. 135, this court, through WILLIAMS, J., has held that such disability does not relieve her. At page 139, he says:

"It applies to cases where the legal, as well as to those in which only the equitable, title has emanated from the Government.

"The statute contains no saving clause in favor of persons under disability after a right of action has accrued to them, and the courts cannot write into it an exception in their behalf. 'The act of 1874 was evidently intended to be a statute of absolute repose to those who come within the protection of its provisions.' "

So also VALLIANT, J., in Scannell v. Am. Soda Fountain Co., 161 Mo. l. c. 619.

In the Collins case the facts are stated as follows:

"It is an ejectment. A patent issued in 1860 from the United States to George and Spencer Collins for the land in dispute. George died in 1860 or 1861, and Spencer in 1864. Defendants are in possession. Plaintiffs are heirs of the patentees. This made for them a prima-facie case.

"The defense relied upon is the limitation of thirty years contained in section 6770, Revised Statutes 1889.

"The testimony tended to prove that Solomon Collins, father of George and Spencer, was in possession of the land in 1860, when it was entered. He assigned to them a land warrant belonging to him and it was located on this tract. It is said by some of the witnesses that this was done and the patent issued in their name because the father was financially embarrassed. He nevertheless remained in possession, and there is evidence showing that he openly asserted his ownership thereof. He went away during the war and did not return to the land until a year or more after its close. The dates are not very definitely fixed in the record. He continued, after he came back, to use and claim the land as his own until 1879, when he sold it to C. E. Pease. The latter then went into possession and held

it, undisturbed by any adverse claim, until he sold to the defendants. They have had exclusive possession since their purchase.

"At the time of the death of Spencer and George Collins, they had two sisters, who were then married women, and have remained under coverture since. These sisters and their husbands, in 1894, conveyed their undivided interest to plaintiff, Harrison Collins, Jr."

So that we have the case at bar as to facts. Legal title in George and Spencer Collins in 1860, date of patent; adverse possession in Solomon Collins from the date of entry in 1860 to date of deed to Pease and in Pease and his grantees to date of suit. By death of George and Spencer in 1861 and 1864, legal title was cast upon their two sisters, then married, and a brother, their grantee, the plaintiff in the suit. If under these facts the disability would not protect these two women and through them their rights afterward conveyed to the plaintiff, as was said by Judge WILLIAMS, we can see no reason why the disability of coverture upon the part of Martha Ann DeHatre should protect the plaintiffs in the case under consideration.

In our judgment section 4268 is a statute of repose. In cases falling within its terms, it has the effect of vesting absolutely the legal title to the land in the person holding the possession and paying the taxes during the years of limitation fixed by the statute. In fact, all statutes of limitations are statutes of repose, passed for the beneficent purpose of putting an end to the litigation of stale cases, the evidence in which may have been scattered to the four winds, by the lapse of time. These same statutes reduce the opportunities for perjury and are demanded by public policy in the interest of the general welfare of the citizens of the State.

That this section 4268 is fully recognized as a statute of limitations and a statute of repose by this court

fully appears from the following cases: Fairbanks v. Long, 91 Mo. 628; Collins v. Pease, 146 Mo. 135; Scannell v. American Soda Fountain Co., 161 Mo. 1. c. 619.

In Fairbanks case, supra, BRACE, J., says:

"As to the remaining contention of counsel for appellants, that, at the time the act went into effect, all the plaintiffs, except one, were laboring under the disability of minority, it is sufficient to say that the statute makes no exceptions, and the settled rule is, in respect to the running of the Statute of Limitations, that the statute will run against all persons, 'and no exception to the statute can be claimed unless it is expressly mentioned in such statute,' and 'where the statute makes no exception, the court can make none on the ground of any inherent equity, or because it may appear to be reasonable that the statute should not run against any party in a given case.' [Tyler on Ejectment, 928, 929, and cas. cit.; Angell on Lim. (6 Ed.), 203 and cas. cit.] The act of 1874 was evidently intended to be a statute of absolute repose to those who came within the protection of its provisions."

In Collins case, supra, WILLIAMS, J., quoting from the Fairbanks case, added his approval to the doctrine of that case, as we have shown by a quotation above made.

When we said the statute was a statute of repose for cases falling within its terms, we said it advisedly, having in view the case of Hall v. French, 165 Mo. 430, and cases therein cited. There are cases which would not come within the meaning of the statute, and the distinction is drawn by MARSHALL, J., in the Hall case, supra. In that case the two estates had been carved out by deed. By this deed there was a life estate in Ann P. Henderson and a remainder in her bodily heirs. Being married at the time the deed was executed, her husband, Henry M. Henderson, by operation of law took the life estate of the wife so long as

the marriage relation continued, and was entitled to sue for and protect the possession. This interest of the husband was sold under execution and the defendants, who invoked section 4268, held by mesne conveyances under the purchaser at the execution sale. It will be observed by a reading of this case, that the two estates had been carved out of the whole, and had a separate existence, before any statute of limitations could begin to run. The purchaser at the sale bought the interest of the husband and thereafter said purchaser and his grantees occupied the husband's place in their relation to the land, and their holding was not adverse to the remaindermen, under the facts, nor was their payment of taxes adverse to the remaindermen. They began this payment of taxes after there had been a separation of the two estates in the land. With the interest which they bought it became their duty to pay taxes.

But this case is not the case at bar. The payment of taxes and the adverse possession began in 1866, being prior to the separation of the two estates in 1871, upon the death of Mrs. Withington. The case at bar is parallel with the Collins case, supra, the doctrine of which is approved by Judge MARSHALL. In our judgment if the two estates had been carved from the whole, either by deed or operation of law, prior to the beginning of the adverse possession, and the payment of taxes, then section 4268 does not apply, except as to the possessory estate. In other words, does not apply to the remaindermen. But on the other hand, if the adverse possession and the payment of taxes began prior to the carving out of the two estates from the whole, then such statute does apply, and as to the whole estate. Again, as in effect held in the Collins case, supra, if this separation of the whole into two estates is the result of the disability of coverture arising after the adverse possession and payment of taxes began, then such disability can in nowise impair the

force of the statute. We, therefore, conclude that the Hall case, supra, is clearly distinguishable from the case at bar, and as clearly so as the Collins case was distinguishable from the Hall case, which distinction was drawn by MARSHALL, J., in the Hall case.

In all this we recognize that even between joint tenants and between life tenants and remaindermen, adverse possession might arise. If one joint tenant should openly claim the whole estate, as against the other, or even if a life tenant should openly claim the whole estate as against the remainderman, a condition of facts might be shown which -would start the operation of some one of our statutes of limitations, but a discussion of this can serve no good purpose here. It is not in the case at bar.

From what has been said it follows that the judgment of the circuit court should be affirmed, and it is so ordered.

*Valliant* and *Lamm, JJ.*, concur; *Brace, C. J.*, concurs in result.