BELLE POWELL et al., Appellants, v. MARY BOWEN et. al.

In Banc, July 7, 1919.

1. **DEED OF MARRIED WOMAN: Defective Acknowledgment: Prior to 1883.** A deed made by a married woman, the certificate of acknowledgment of which simply recited that she and her husband "personally appeared before me, a notary public in and for said county, both being personally known to me and acknowledged the execution of the annexed deed," made when the statute (Secs. 680, 681, R. S. 1879) requiring that any officer taking the acknowledgment of a married woman to any deed of conveyance of real estate must examine her separate and apart from her husband, and so certify in the certificate of acknowledgment, and further certify that she executed such conveyance freely and without compulsion of her husband, was in force, was void.

2. ———: **Abandonment of Land.** The defense of abandonment, disassociated from other defenses, such as adverse possession or failure to pay taxes, has never been recognized at common law as affecting title to real property; for at common law title can neither be lost nor gained by abandonment operating alone.

3. ———: **Laches and Estoppel: Suit for Interest.** Neither *laches* nor estoppel *in pais* is as to her real estate imputable to a married woman who ever since the making of her void deed in 1882 has been under the legal disability of coverture, the reason being that prior to the Married Woman's Acts of 1889 the right of possession of a married woman's lands was in her husband and was a vested

Powell v. Bowen.

right which was not destroyed by those acts, and she could not before or since have maintained an action for possession. Since the Act of 1897 she could have maintained an action to determine interest, but was not compelled to do so, but that act did not divest the husband's existing right to possession, or permit her to sue for possession during his life.

> *Held* by GRAVES, J., dissenting, that the Act of 1897 afforded to a married woman the right to assert her interest in land, and a remedy; and if she stood by for eighteen years after its enactment and saw valuable improvements made upon the land she is barred by estoppel *in pais* from asserting such interest; and estoppel *in pais* goes both to the remedy and the right, and may be set up as a defense in actions at law and suits in equity.

4. ———: **Estoppel By Covenant in Void Deed.** A married woman is not estopped to assert her interest in land by a covenant in a deed which is void as to her because not acknowledged in the manner required by statute. The deed being void, any covenant in its cannot be efficacious to produce estoppel.

5. ———: **Limitations.** Neither the ten-year, nor the thirty-one-year, nor the twenty-four-year Statute of Limitations was a bar to a married woman's suit begun in 1915 to establish her interest in land attempted to be conveyed in 1882 by a deed void because it was not acknowledged in the manner prescribed by statute, she being at the time and ever since under the legal disability of coverture. There was no time when she was capable of maintaining an action for possession, and as no such action can accrue to her until her husband's death, the thirty-one-year and the ten-year statute has never begun to run as to her, and her suit to establish her interest is not barred by the twenty-four-year statute, because it was begun in less than twenty-four years after the Act of 1897 was passed.

> *Held,* by GRAVES, J., dissenting, that Section 1881, Revised Statutes 1909, which antedated the Married Woman's Acts of 1889, should no longer be held to except married women from the provisions of the ten-year and other statutes of limitations, but the Married Woman's Acts having made her a *femme sole*, with power to sue for her interest in lands, she should be considered discovert, and said Section 1881 should not be held to prevent the statutes of limitations from running against her.

6. ———: ———: **Thirty-year Statute: Obligation to Pay Taxes.** As between a married woman, whose deed made in 1882, in which her husband joined, was void as to her because not acknowledged in the manner prescribed by statute, and who has since been under the disability of coverture, and her husband's grantee and grantees by *mesne* conveyances, as the obligation to pay taxes

rests up the latter, the holders of his lifetime right to possession; and hence the thirty-year Statute of Limitations does not apply to her in her suit to establish her interest in the land, she being at no time entitled to its possession.

7. **CHAMPERTY:** Agreement of Attorney to Pay Cost. An agreement by an attorney with a married woman to pay the cost of a suit to recover her interest in land, in consideration of a one-half interest in the amount recovered, even if champertous between him and her, does not serve to deprive her of relief touching the land as against a stranger to the contract.

Appeal from Pemiscot Circuit Court.—*Hon. Sterling H. McCarty*, Judge.

REVERSED AND REMANDED (*with directions*).

*Duncan & Brewer* for appellants.

(1) The deed made by Belle Powell and her husband, dated Sept. 15, 1882, is null and void and did not convey the land in question to Leonard for the reason that the certificate of acknowledgment to said deed fails to recite that the said Belle Powell was first made acquainted with the contents of such instrument and acknowledged said deed on examination separate and apart from her husband, and does not recite she executed said deed freely and without compulsion or undue influence of her husband. 1 Wagner's Statute 1872, p. 275, sec. 13, and sec. 14; Linville v. Greer, 165 Mo. 394; Mayes v. Price, 95 Mo. 613; Bartlett v. O'Donohue, 72 Mo. 563; Goff v. Roberts, 72 Mo. 570; Hoskinson v. Adkins, 77 Mo. 540; Hord v. Taubman, 79 Mo. 103; Rivard v. Railroad, 257 Mo. 164; Laclede Land & Imp. Co. v. Goodno, 181 S. W. 412; Bagby v. Emberson, 79 Mo. 139; Devlin on Deeds (3 Ed.), sec. 107. (2) As Belle Powell was married in the year 1870, and remained under said coverture from that time to the bringing of this suit, plaintiffs are not barred by either the twenty-four-year Statute of Limitations or the so-called thirty-year Statute of Limitations pled by defendant. Dyer v. Wittler, 89 Mo. 81; Vanata v. John-

son, 170 Mo. 274; DeHatre v. Edmonds, 200 Mo. 267; Bone v. Tyrell, 113, Mo. 188; Howell v. Jump, 140 Mo. 457; Shumate v. Snyder, 140 Mo. 87; Land &. Imp. Co. v. Epright, 265 Mo. 215; Lewis v. Barnes, 199 S. W. 212; Graham v. Ketchum, 192 Mo. 15; Babcock v. Adams, 196 S. W. 1118; Smith v. Smith, 201 Mo. 533. (3) Plaintiffs are barred neither by laches nor by estoppel. Blodget v. Perry, 97 Mo. 273; Bales v. Perry et al., 51 Mo. 453; Dameron v. Jamison, 143 Mo. 491; Mayo v. Cartwright, 30 Ark. 407; Throckmorton v. Pence, 121 Mo. 50; Myers v. DeLisle, 259 Mo. 514; Lewis v. Barnes, 199 S. W. 212; Bigelow on Estoppel (3 Ed.), 484; Acton v. Dooley, 74 Mo. 69; Monks v. Beldan, 80 Mo. 642; Harrison v. McReynolds, 183 Mo. 549; Rutter v. Carothers, 223 Mo. 640; Shannon v. Thompson, 234 Mo. 15; Henry v. Sneed, 99 Mo. 425; Rannells v. Gerner, 80 Mo. 483. (4) The deed of a married woman defectively acknowledged does not operate as an estoppel against her. Devlin on Deeds (3 Ed.), sec. 5486; Drury v. Foster, 2 Wall. 34; Smith v. Ingram, 61 L. R. A. 678. (5) The doctrine of champerty and maintenance is not applicable to this case, for the plaintiffs will not be deprived of relief because the contract between plaintiff, Belle Powell, and the plaintiff, Bex A. Trimble, may be infected with champerty. Euneau v. Rieger, 105 Mo. 682. (6) The court erred in refusing instruction number I offered by the plaintiffs declaring that under the pleading and evidence in the case the finding should be that the plaintiffs are the owners of the land in question and that the defendant, Mary Bowen, was entitled to the possession of the premises as long as the marital relation existed between plaintiff, Belle Powell, and her husband, John W. Powell. (7) As plaintiff, Belle Powell, had the legal title to the land in question under the law there could be no abandonment of the title. Tiedeman on Real Property (3 Ed.), sec. 516; Corpus Juris, p. 10, sec. 14; Barrett v. Kansas Coal Co., 70 Kan. 649; Kreamer v. Boneida, 213 Pa. 80; Tarver v. Deppen, 132 Ga. 804; Tennessee Oil Co. v. Brown, 131

Fed. 699; Calledonia County Grammar School v. Kent, 77 Am. Dec. (Vt.) 880; Arnold v. Cramer, 41 Pa. Super, 13.

*C. G. Shepard* for respondents.

(1) Under the peculiar facts in this case both the twenty-four and thirty-one-year Statutes of Limitations are effective and are a complete bar to plaintiff's cause of action to quiet the title to the land in question. Faris v. Moore, 256 Mo. 123; Belfast Inv. Co. v. Curry. 264 Mo. 483; DeHatre v. Edmonds, 200 Mo. 246; Collins v. Pease, 146 Mo. 139; Fairbanks et al. v. Long, 91 Mo. 628. (2) Belle Powell and her husband abandoned the land in question in 1882, gave the land no attention from that date up to the time or just prior to the time this suit was filed, and such abandonment completely defeats their right of recovery in this case. Tayon v. Ladew, 33 Mo. 205; Shelton v. Horrell, 232 Mo. 358; Carson v. Verthoed & Jennings Lumber Co., 192 S. W. 1022. (3) Suits to quiet title under Section 2535 are not possessory actions, and the statute as first enacted did not contemplate recovering possession of the land to which the title was to be quieted under said section, therefore a married woman from and after the enactment of said section had a full and complete cause of action in her behalf for the purpose of quieting title to land, as did any other person, even though she was a married woman prior to the enactment of the Married Woman's Enabling Act and remained a married woman until the time of instituting suit. There being no exemption clause in the twenty-four or thirty-one-year Statutes of Limitations exempting married women from the operation of said statute, the courts have no right to read into said statute provisions that were not placed therein by the Legislature, therefore said statutes are as effective against married women as against other parties. (4) The Married Woman's Enabling Act emancipating her and making her *sui juris*, was encated in 1889; what is now Section 2535 was first enacted in

1897, and it must be presumed that at the time the Legislature passed the act for quieting title to land it had in mind the Married Woman's Act, as well as the twenty-four and thirty-one-year Statutes of Limitation, and passed the statute authorizing the quieting of titles as much for the benefit of married women who could not bring a possessory action by reason of the fact that their husbands' right to possession had attached prior to the married Woman's Act, and there being no exemption in behalf of married women in either the twenty-four or the thirty-one-year Statutes of Limitation, and there being nothing said in the act to quiet title in regard to married women, it must be presumed that the Legislature had in mind the fact that married women in many instances could not bring a suit to recover possession of land, therefore, it was necessary that they have the right to bring a suit quieting the title and showing their interest in the land even though they were not entitled to the possession thereof. (5) The reading of Section 1881 clearly contemplates that the bringing of an action asserting title has the same effect insofar as arresting the Statute of Limitaion is concerned as bringing a possessory action. (6) Belle Powell, by reason of her laches and failure to look after said land or claim any right, title or interest therein, permitting the parties claiming to own said land to make expensive and valuable improvements thereon, is now estopped to come in at this late day and claim said land in its improved condition. And this condition prevailing at the time plaintiff, Belle Powell, made her deed to her co-plaintiff, Bex A. Trimble, he is likewise estopped. Tennent v. Union Life Insurance Co., 112 S. W. 754; Toler v. Edwards, 249 Mo. 152; Shelton v. Horrell, 232 Mo. 358; Rutter v. Carothers, 223 Mo. 631; Powell v. Powell, 267 Mo. 117; Moreman v. Talbot, 55 Mo. 392. (7) Under the facts in this case the doctrine of champerty and maintenance applies with all its vigor and plaintiffs cannot maintain this suit. 6 Cyc. 850; Duke v. Harper, 66 Mo. 57; Bent v. Triest, 86 Mo. 475.

FARIS, J.—This is an action to determine interest in a certain parcel of real estate situate in Pemiscot County. Upon the trial below defendants had judgment, and plaintiffs, after the usual motions, appealed.

The facts are few and simple. Plaintiff Belle Powell married one John W. Powell on the 24th day of March, 1870, and ever since has been and was at the time of the bringing of this suit, on the 4th day of May, 1915 a married woman. While under all the disabilities of coverture, plaintiff Belle Powell (hereinafter for brevity, except where otherwise stated, referred to simply as "plaintiff") acquired title to the land in dispute. On the 15th day of September, 1882, plaintiff, together with her husband attempted to convey this land by warranty deed to one Mark T. Leonard. The form of deed used in this attempted conveyance was not the general form of warranty deed in common use at that time in the State of Missouri, but seemingly this instrument followed an Indiana form. No point is made, however, upon any portion of this instrument, except the acknowledgment appended thereto which is alleged to be defective. This acknowledgment constitutes the sole ground and *raison d'etre* of this action. Omitting venue, signature and seal of the officer taking the same, all of which are conventional and are not attacked, the acknowledgment to this deed reads thus:

"Before me Fred P. Leonard, Notary Public in and for said county, this 15th day of September, 1882, personally appeared the within named Belle Powell and John W. Powell, both being personally known to me and acknowledged the execution of the annexed deed."

A part of the land in controversy was, at the time of the above attempted conveyance thereof, in cultivation and in the possession of the grantors. The grantees in the above *instrument of conveyance*—we so denominate it for convenience—thereupon took possession of this land, and they and their *mesne* grantees continued in possession, and were in possession thereof on

the 4th day of May, 1915, when this action was brought.

The defendants derive their paper title from the above mentioned conveyance to Mark T. Leonard. Leonard thereafter conveyed the land to one Willis Charles. Willis Charles gave a mortgage thereon to said Mark T. Leonard, which mortgage being foreclosed, the land was sold by the sheriff and purchased by one John Wilks, who entered into possession of the same and continued in possession thereof till his death. Upon the death of Wilks, the land was duly partitioned among his heirs, and the part here in .dispute was set off to his daughter Mary, intermarried with one William J. Bowen, who are the defendants herein.

The several defenses interposed upon the trial will be summarized in the opinion, and no necessity exists for lengthening this statement by a recital of them here.

Upon the trial, the testimony of plaintiff Belle Powell was offered in evidence by deposition. Among other things shown therein was the nature of the contract made by plaintiff Belle Powell with her co-plaintiff Bex A. Trimble. Touching this contract, plaintiff Belle Powell said in her cross-examination:

"I received information about March of this year from Bex A. Trimble that led me to believe that I could recover this land. Bex A. Trimble is one of the lawyers representing me in this case. He was to have one half of (*sic*) 50% of any land recovered by suit or compromise. Mr. Trimble and the lawyers with whom he is associated in this matter are to pay all costs and expense and to hold me harmless in regard to the costs in this suit, or any suits that might be brought for this land or any part of it."

This plaintiff further testifies that she sold the land to Mark T. Leonard, and that after she sold it to Leonard she "didn't have anything further to do about it," and that she had "never paid any taxes on it from that time, since she considered that she had no further interest in it and abandoned all claims to it." As a part of plaintiffs' case they offered a quit-

claim deed, dated April 30, 1915, from Belle Powell and her husband, John W. Powell, conveying to plaintiff Bex A. Trimble an undivided one-half interest in the land in dispute and other lands.

If any further facts shall become necessary to an understanding of the points involved, these will be stated in the opinion.

I. The sole source of paper title in defendants, as such title is disclosed by the record, is one Mark T. Leonard, to whom as stated, plaintiff and her husband attempted to convey the land in dispute by warranty deed bearing date the 15th day of September, 1882. At the time plaintiff signed and delivered, and attempted to acknowledge the instrument in question, and for some ten months thereafter (See Laws 1883, p. 21) the law in force in this State required that any officer taking acknowledgment of a married woman to any deed of conveyance of real estate must examine such woman separate and apart from her husband (Secs. 680, 681, R. S. 1879), and so certify in the certificate of acknowledgment, and further certify that the wife executed such conveyance freely and without compulsion or undue influence of her husband.

Mere casual reference to the acknowledgment of the deed of conveyance from plaintiff and her husband to Leonard discloses a palpable lack of conformance to the certificate of acknowledgment with the law then in force. That this deed was void is well settled— in fact, that it is so void is tacitly conceded by defendants.

Certain other facts, as shown in part by the foregoing statement, are either conceded by the parties or they are conclusively shown by the record. These we epitomize, and re-state below some of them. They are: (a) That plaintiff was married March 24, 1870, and when she attempted on the 15th of September, 1882, to convey the land in controversy to Leonard, was, is

now, and continuously since said latter date has been, a married woman and under all the disabilities of coverture which existed by law in this State until 1889 (Sec. 6869, R. S. 1889); (b) that neither plaintiff, nor any one for her, nor her husband or any one for him, has paid any taxes of any kind on this land since September 15, 1882, but that such taxes, and all of them, have been for all the years intervening paid by defendants and those under whom defendants claim; (c) that since the date last mentioned defendants and those under whom they claim title have been in the actual, open, notorious, continuous, exclusive, peaceable and adverse possession of the lands in controversy; (d) that these lands have grown in value by reason of the labor and money expended thereon, and on account of money expended for betterment and taxes by defendants and those under whom defendants claim, from $800, their fair value when the attempted conveyance was made to Leonard, to $32,000, their present actual cash value; and (e) that by the contract of plaintiff Belle Powell with her co-plaintiff Trimble, who is an attorney at law, this action is to be maintained and prosecuted by the latter at his own expense, and plaintiff Belle Powell is to be held harmless from all costs of suit and expenses, in consideration of her conveying to said Trimble a half interest in the land in controversy.

To escape the force of the legal conclusion, arising from the fact that plaintiff's deed to Leonard, the common source of title, is void, defendants urge that plaintiffs are barred by (1) the twenty-four-year Statute of Limitations; (2) the thirty-one-year, or so called thirty-year, Statute of Limitations; (3) the ten-year Statute of Limitations as based upon the Act of 1897 (Laws 1897, p. 74), and the alleged duty of plaintiff to have begun her action within ten years after she was by the above act permitted so to do; (4) that the contract between plaintiff Belle Powell and her co-plaintiff Trimble is champertous; (5) that plaintiff Belle Powell

19—279 Mo.

abandoned this land from September 15, 1882, till May 4, 1915; and (6) that plaintiffs have been guilty of such *laches* and acts *in pais* as to estop them from asserting title after more than thirty-two years have elapsed from the date of the attempted conveyance.

II. Coming to consider whether any of the above defenses are valid as against plaintiff's paper title, we might, without examining them and for the sake of argument, concede that each and all of them except that of abandonment would be efficacious and would constitute complete defenses as against any person *sui juris.* The defense of abandonment, disassociated from other defenses, e. g., adverse possession, or a failure to pay taxes, has never been recognized as affecting title to real property at common law. For at common law, whatever the rule may have been under the Spanish or Civil law (Tayon v. Ladew, 33 Mo. 207), title to real property can neither be gained nor lost by abandonment operating alone. [Robie v. Sedgwick, 35 Barb. 319; Philadelphia v. Riddle, 25 Pa. St. 259; Perkins v. Blood, 36 Vt. 273.] Because both the defense of *laches* and that of estoppel *in pais* may be dealt with together, we do not stop to consider again whether *laches* may be imputed even to one *sui juris* when such one puts forward as the basis of his action nothing but a pure legal title. [See Kellogg v. Moore, 271 Mo. l. c. 193; Garrison v. Taff, 197 S. W. l. c. 274; Newbrough v. Moore, 202 S. W. l. c. 551; Bell v. George, 204 S. W. l. c. 519; Chilton v. Nickey, 261 Mo. l. c. 243.]

Touching the insistence of learned counsel for defendants that plaintiff is barred by *laches* and by estoppel *in pais,* we are constrained to hold, perforce the authorities, that neither *laches* nor estoppel *in pais* is as to her real property imputable to a married woman, who was (and who so continued down to the date of the judgment herein) under the disability of coverture when the amendment of 1889 to the Married Woman's Act took effect. [10 R. C. L. 403; Waldron v. Harvey,

*Laches and Estoppel.*

54 W. Va. 608;   Gibson v. Herriott, 55 Ark. 85;   10
R. C. L. 742;   Phillips v. Piney Coal Co., 53 W. Va. 543;
Crenshaw v. Julian, 26 S. C. 283; Krathwohl v. Daw-
son, 140 Ind. 1; Colorado Ry. Co. v. Allen, 13 Colo.
229.]

The legal reasons for this rule are fairly obvious,
especially when applied to the concrete case before us.
By virtue of the Law in force in 1882, and of the
husband's marital rights at common law, the right of
possession of the land in controversy was in the husband
of plaintiff. While such husband lived, plaintiff could
not have brought any possessory action for the recovery
of the land in dispute. This right of possession in the
husband had become a vested right before the amend-
ment of 1889 to the Married Woman's Act took effect.
The latter amendment could not divest the husband of
his vested right of possession, and could not in any
wise affect the husband's interest therein. No action,
it is plain, except a possessory action, would have af-
forded plaintiff any adequate or substantial relief.
Since plaintiff, during the lifetime of her husband,
was unable to bring a possessory action, it follows
that her failure to sue cannot be the basis of *laches*.
It is true, that since both the Act of 1889 and the Act
of 1897 (Laws 1897, p. 74) took effect, plaintiff, at any
time since the latter date, could have brought an action
to determine interest, that is, the identical action which
she now has before us. But she was not compelled to
bring such an action. She was not even compelled ·to
bring the present action at the time she did bring it.
She could have waited till the right of possession of
the land in her husband terminated by his death,
and then, within ten years, have brought ejectment.

In fact, if she had brought an action to determine
interest in 1897, as soon as the act supra of that year
permitted her so to do, she would have been compelled,
by the same token, to have brought another action
in 1907 and still another in 1917 (or even earlier and
oftener than in ten-year periods, since *laches* often

operates to bar right of action far short of the period prescribed by the applicatory Statute of Limitations). Failing to sue thus early and often, her rights would have been barred and lost to her forever, upon the doctrine of *laches* here contended for. To this absurdity it is apparent the defense of *laches* leads us when we try to apply it to the concrete case.

The right of plaintiff's husband to the possession of the land during his natural life (which right since it constitutes an estate of freehold and is in fact an estate *pur autre vie,* has been called a "life estate," because its effect upon the remainderman in some phases is similar to that of a technical life estate) saved and protected plaintiff's interest. It is fundamental that *laches,* or neglect to promptly bring or assert a cause of action to the hurt of a potential defendant, can never be imputed to one who has no right to sue, or to a case wherein a suit if brought, would not afford any actual relief. *Laches* is but a manifestation of estoppel *in pais.* The latter is the genus, the former merely a species. That estoppel *in pais* is not imputable to a married woman who rests under *the disabilities of coverture stated in the premises* is settled by what we say above, and by the authorities in this State, and by the weight of authority everywhere. [Rannells v. Gerner, 80 Mo. l. c. 483; Cockrill v. Hutchinson, 135 Mo. 67; Henry v. Sneed, 99 Mo. l. c. 425; Lewis v. Barnes, 272 Mo. l. c. 404; Crenshaw v. Creek, 52 Mo. 98; McBeth v. Trabue, 69 Mo. 642; Lowell v. Daniels, 2 Gray (Mass.) 161; 10 R. C. L. 742; Barker v. Circle, 60 Mo. 258; Mays v. Pelly, 125 S. W. (Ky.) 713; Scott v. Battle, 85 N. C. 184; Morrison v. Wilson, 13 Cal. 495; Cook v. Walling, 2 L. R. A. (Ind.) 769, and note.] We need not reiterate that we are passing only upon the concrete case before us, and not upon a case wherein the wife's separate property is involved, or a case wherein the woman married subsequent to the time at which the amendment of 1889 to the Married Woman's Act took effect.

III. The above cases are likewise persuasive authorities against the suggestion that plaintiff was estopped by the covenant in her deed. Obviously, also,

Estoppel by Covenant.

the plain reason of the thing is against any such view. For, if she is to be estopped by her deed, then such deed, to be efficacious in producing an estoppel, must of necessity be a good and valid deed, and it is axiomatic that a thing which cannot be done directly cannot, of course, be done indirectly. The deed here is utterly void. Neither can her covenant of warranty estop her, for, among other reasons against such a view, she was not estopped at common law (21 Cyc. 1344) and there was in existence and applicatory in 1882 a statute which limited and made void the covenant of a married woman, except in so far as was necessary effectually to convey her title expressed to be conveyed by such deed. [Sec. 669, R. S. 1879.] If the deed, as was the case here, was utterly void and conveyed no title by reason of such invalidity, then it follows that the covenant was void also. It results that these contentions of defendants must be disallowed.

IV. Coming to the strenuously and ably urged contentions of counsel for defendants that plaintiff is barred by the several statutes of limitations noted, we are likewise constrained to disallow each and all of these. The twenty-four-year Statutes of Limitations and

Limitations.

the thirty-one-year statute are expressly pleaded. The ten-year statute is raised by a general denial. [Carson v. Lbr. Co., 270 Mo. l. c. 245; Land & Imp. Co. v. Epright, 265 Mo. 210.] Under the facts which were admitted, or which are conclusively shown by the proof, plaintiff without any question would have been barred by every statute of limitations pleaded, if she had not been protected by the disability of coverture. In fact, it is settled law that if she had had an existing cause of action, even the disability of coverture alone would not have saved such cause of action to her, because we have held that, *given an ex-*

*isting cause of action,* neither insanity (Faris v. Moore, 256 Mo. 123) nor coverture will save such action after the lapse of twenty-four years of adverse possession (De Hatre v. Edmonds 200 Mo. 246), because so reads the statute. [Sec. 1881, R. S. 1909.] The difficulty under which we labor in applying the twenty-four-year statute to the facts in this case is that since plaintiff was married in 1882, her husband was entitled alone to sue, and she has never since that date, or at least until 1897, had any cause of action. Since plaintiff sued in less than twenty-four years after she had a bare cause of action, or right to sue, we need not consider a situation wherein there is, and will be, no cause of action till the death of one who holds a life estate, or an interest tantamount to such an estate. All such interests are' saved, covered and protected by the outstanding life estate. [De Hatre v. Edmonds, 200 Mo. l. c. 273; Lewis v. Barnes, 272 Mo. 377; Herndon v. Yates, 194 S. W. 46; Armor v. Frey, 253 Mo. l. c. 477; Bradley v. Goff, 243 Mo. 95.]

In the case of Bradley v. Railroad, 91 Mo. l. c. 498, BRACE, J., of this court, expressed the thought with rare terseness when he said: "No cause of action accrued to her until her husband's death and until that event the Statute of Limitations did not commence to run against her or her heirs." [Dyer v. Brannock, 66 Mo. 391.]

Nor did the Act of 1897, supra, have the *effect* to divest the husband's right to possession, or to confer on the plaintiff the right to bring a possessory action, or to bring any other action which would afford either actual or present relief to her. Besides, as we have already pointed out in discussing other phases of this case, such a view would force us to assume the anomalous position of saying to plaintiff in effect, that she must have sued to determine interest within less than ten years after the Act of 1897 took effect, and that after a judgment in her favor she must continue to bring fresh suits to determine interest every ten years, while her husband lives, or lose her land as a penalty. Discussing a situation precisely analogous, we took oc-

casion to say, in Division Two, in the case of Herndon v. Yates, 194 S. W. l. c. 48, this:

"Defendants insist that the Statutes of Limitations bar recovery; relying, it seems, upon both the ten-year statute and the thirty-year statute for this position. Both the time and sort of possession meet for a foundation for the running of these statutes were shown, we may concede for argument's sake; but learned counsel in urging the applicability of these statutes overlook the fact that the plaintiffs are remaindermen, and that Lutes, who holds the life estate, is yet alive, and therefore, since his life estate has not yet fallen in, plaintiffs were not compelled to bring this action till he died. They are not, of course, protected here by their non-age existing up till the time they married, nor by their subsequent and yet continuing coverture, because they may not tack these disabilities, but they are protected by the fact that defendants were (and yet are as to a present action in ejectment, entitled to the possession of the land in dispute till the holder of the life estate shall die. While there are a few cases wherein broad language was used which was peculiarly applicable to the facts in such cases and which language from its broadness seems to squint at the view that since the right to sue was given to plaintiffs by statute in 1897, they must have sued to determine interest within ten years thereafter (cf. De Hatre v. Edmonds, 200 Mo. 246, 98 S. W. 744, 10 L. R. A. (N. S.) 86; Burkham v. Manewal, 195 Mo. 500, 94 S. W. 520; Haarstick v. Gabriel, 200 Mo. 237, 98 S. W. 760), and while at first blush on some considerations the logic of the thing may seem also to point somewhere in that direction, yet the rule is sound and free from absurdities which holds otherwise (Armor v. Frey, 253 Mo. 447, 161 S. W. 829). For we would involve ourselves in an absurd position if we were to say that plaintiffs are barred here in this action, but that if they had but waited till the life estate fell in they would have been entitled to bring ejectment at any time within ten years subsequent to

such event. The Statute of Limitations could not begin to run against plaintiffs till they became entitled to the possession of the land in dispute. This right to possession being postponed by the protecting life estate they were not barred here. [Bradley v. Goff, 243 Mo. 95, 147 S. W. 1012; Hauser v. Murray, 256 Mo. 58, 165 S. W. 376; Armor v. Frey, supra.]''

.While the situation presented makes the case a hard one, apparently working great injustice upon the defendants, the rules of law invoked are well settled by numerous adjudged cases. These rules are the result of following the common law, unchanged till 1889 by statutes requiring a more logical and fair view of the relations and property rights of married men and women. We cannot change the law as it is written, however much the compelling justice of the situation may seem to urge. To do so would necessitate the overruling of dozens of cases and would bring about an unsettling of the law in matters wherein it has been deemed settled by Bench and Bar for almost half a century. [See Dyer v. Wittler, 89 Mo. 81; Howell v. Jump, 140 Mo. 441; Shumate v. Snyder, 140 Mo. 77; Vanata v. Johnson, 170 Mo. 269; De Hatre v. Edmonds, 200 Mo. l. c. 267; Smith v. Smith, 201 Mo. 533; Land & Imp. Co. v. Epright, 265 Mo. l. c. 215; Graham v. Ketchum, 192 Mo. 15; Dyer v. Brannock, 66 Mo. 391; Pim v. St. Louis, 122 Mo. l. c. 665; Bradley v. Railroad, 91 Mo. 493; Hall v. French, 165 Mo. l. c. 440; Smith v. Patterson, 95 Mo. l. c. 529; Babcock v. Adams, 196 S. W. 1118; Lewis v. Barnes, 272 Mo. 377.] Many other cases can be found, but these should suffice. If to-day, in order to meet a seemingly unjust and harsh case, we should change the settled law, perhaps to-morrow, again in order to meet a harsh and unjust case, we might be compelled to return to the law as it is now ruled.

V. What has been said above herein applies with equal force to the so-called thirty-year Statute of Limitations. Here plaintiff was, as between her and her

husband, who was entitled to possession of the land (whatever her duty may have been to the State) under no obligation to pay taxes. It may indeed be said that the duty to pay taxes, considered merely as a matter between plaintiff and defendants, was upon the latter as the holders and owners of the life estate. Nor was plaintiff, as we have seen, at any time in the thirty-six years, which have now elapsed, entitled either to make an entry, or to bring a possessory action. Hence, it follows that neither the ten-year statute, the twenty-four-year statute, nor the thirty-year Statute of Limitations applies to her here.

*Thirty-year Statute.*

VI. Upon the question of champerty, the ruling must likewise be against the defendants. [Euneau v. Rieger, 105 Mo. 1. c. 680.] If the agreement between plaintiffs Belle Powell and Bex A. Trimble *inter sese* be champertous, this fact will not serve to deprive plaintiffs of relief touching the subject-matter dealt with in the champertous contract as against a stranger to such champertous agreement. While there are in some jurisdictions—Wisconsin, for example—holdings to the contrary, and in favor of the view urged on us by defendants, the great weight of authority everywhere bears out the rule we state above. This State early took the view set forth in Euneau v. Rieger, supra. This rule is buttressed both by the reason of the thing and by the overpowering weight of the ruled cases. We see no good or sufficient reason to now change either our views upon the point or the rule announced thereon. Let this contention also be disallowed.

*Champerty.*

It results that the judgment of the trial court was erroneous and for the wrong party. Let this judgment be reversed and the cause remanded, with directions to the trial court to adjudge the title to the land in controversy to be in plaintiffs, subject to the right of possession of defendants therein, till such time as the husband of Belle Powell shall depart this life, if

so it be—in the event of plaintiff's prior death, such husband shall have also an estate by curtesy. It is so ordered.

*Bond, C. J., Walker, Blair* and *Williams, JJ.,* concur; *Graves, J.,* dissents in separate opinion. *Woodson, J.,* not sitting.

GRAVES, J. (dissenting).—Our learned brother says this is a harsh case. To this I cheerfully accede. It is indeed so harsh, that I will not lend my assent thereto, if upon any legal theory it can be avoided. That the plaintiff in this case received the full value for her land when she sold it is not questioned; that she then, and for more than thirty-one years thereafter, abandoned all claim thereto, she admits; that she knew that her grantee was taking possession thereof, and would make improvements thereon, stands to reason from the record; that the grantee and his subsequent vendors in title did make permanent, valuable and lasting improvements is thoroughly shown; that by reason of these improvements and the advance in lands (growing with the flux of time) the cheap land of 1882 is now worth $32,000; that it required a champertous contract, at this late date, to spur her to this action, is shown. In short, the record facts are nauseating to a sense of right doing, and shocking to a keen sense of justice. I believe that there is a clear way around this wrong, and in the succeeding paragraphs will suggest them.

I. I am not unmindful of our previous rulings upon several of the questions I shall discuss. The harsh facts of this case furnish me further excuse to reiterate what I said in Babcock v. Adams, 196 S. W. l. c. 1120. I then said:

Exception to Statute.

"I have long had in mind the idea that we have misconstrued Section 1881, Revised Statutes, 1909, when read in connection with the Married Woman's Act. In origin this statute antedates the Married Wom-

an's Act. It was at the time of its first enactment expressive of common-law doctrines. At its inception married women belonged to a class suffering disabilities, so far as the right to sue was concerned. This Section 1881 excepted the class (married women) from the limitations prescribed by Section 1879, Revised Statutes 1909, which is the ten-year Statute of Limitations. But for the exception the married woman would have fallen under the ban of said Section 1879. This exception made by Section 1881 was written into the law because of the then inability of a married woman to sue and recover her real estate. When the Married Woman's Act was passed all reason for the exception vanished. By Section 1881 she was not excepted for the reason that she was a married woman, but because she belonged to a class laboring under disabilities. When the disabilities were removed from the class (as they were by the Married Woman's Act), then the excepted class was in effect removed from the statute, and as to Statutes of Limitations the married woman stood just as all other persons *sui juris* stand; in other words, the effect of the Married Woman's Act was to repeal and modify the terms of the statute, to the extent of taking this excepted class (married women) out of Section 1881.

"Since the passage of the Married Woman's Act there is no reason for saying that a man or single woman must sue for lands within ten years, but the married woman, possessed of all the rights to sue as the others should have the statute tolled in her favor. I am aware that our opinions are the other way, but these have long since been my views, and I take this occasion to express them."

It will be noted that I concurred in the Babcock case, solely on the ground that our previous rulings constituted rules of property, and to disturb them would be to disturb property rights. But since that time we have in the case of Klocke v. Klocke, 276 Mo. 572, ruled that the overruling of an opinion of this court, which con-

strued a statute of the State, would not effect previously acquired property rights. In other words, the ruling in the case which overruled such previous opinions would be prospective only and not retroactive. It becomes necessary at times to overrule opinions construing statutes, and which opinions have fixed rules of property. But, in view of the rule in the Klocke case, supra, this should not deter us in righting a wrong, when the mischief is such as to demand it.

In 7 R. C. L. p. 1008, the idea is most elegantly expressed: "If judges were all able, conscientious, and infallible; if judicial decisions were never made except upon mature deliberation, and always based upon a perfect view of the legal principles relevant to the question in hand, and if changing circumstances and conditions did not so often render necessary the abandonment of legal principles which were quite unexceptionable when enunciated, the maxim *stare decisis* would admit of few exceptions. But the strong respect for precedent which is ingrained in our legal system is a reasonable respect which balks at the perpetuation of error, and it is the manifest policy of our courts to hold the doctrine of *stare decisis* subordinate to legal reason and justice, and to depart therefrom when such departure is necessary to avoid the perpetuation of pernicious error."

I think we went wrong in the early cases of Throckmorton v. Pence, 121 Mo. 50, and Lindell Real Estate Co. v. Lindell, 142 Mo. l. c. 76, when we held that under the Married Woman's Act of 1889, a married woman did not have to sue until she became discovert. There were two lines of thought in the early cases at the time of our first ruling. One line held that the Married Woman's Acts (similar to our own) gave a married woman the right to sue whilst she was covert, but she was not obliged to sue where there were statutes (like our Secs. 1881 and 1894, R. S. 1909) which excepted married women from the usual statutes of limitations. The other line of cases held, that the force and effect

of the Married Woman's Act were to strike this exception as to married women from all tolling statutes, such as our Sections 1881 and 1894, supra. Our court followed the first named line of cases, and herein much of our trouble, and all of our harsh case law. I think we erred in the two cases above cited, and under the Klocke case, supra, we can change the rule without prejudicing property rights. We should hold that the effect of the Married Woman's Act of 1889 was to strike from our Section 1881, Revised Statutes 1909, the exception as to married women. It was then Section 6767, Revised Statutes 1889. Not only so, but it would strike a similar exception from Section 1894, Revised Statutes 1909, which was Section 6779, Revised Statutes 1889.

The cases to be overruled are all cases construing statutes, and under the ruling in Klocke's case, supra, no baneful effects will follow. There is no sense in saying (since the Act of 1889 as to married women) that a man or a single woman must sue within the statutory period in order to protect their rights, and that a married woman, with the same legal right to sue, may postpone her action until she becomes discovert. There was no reason for giving her the right, unless she was to be required to exercise it, as a *femme sole.* The very purpose of the law was to place her in the position of a *femme sole.* She needed no statute to give her the right to sue after she became discovert.

The two statutes (Secs. 1881 and 1894, Revised Statutes 1909) had the exceptions therein as to married women stricken therefrom per force of the Act of 1889 as to married women. We should have so ruled from the beginning. We will have to so rule, or be troubled with other harsh and unrighteous cases, as is the case at bar. It will be noted that the two sections cover all kinds of actions, and that the exceptions are the same in each. With these exceptions stricken from these statutes, we are permitted to get to the meat of the instant case.

II. It is urged that the plaintiff in this case could not sue for the possession, because her husband was yet alive. Under our holdings, I shall grant this proposition. But that concession does not settle the case. If the tolling statutes (Sections 1881 and 1894, R. S. 1909) no longer contain an exception as to married women, then this plaintiff is not necessarily protected by the fact that her husband, up to the date of the deed had the right of possession, and that after the deed the defendants and then their predecessors in title had the right of possession.

*Estoppel.*

By the Act of 1897, which, with its amendments, is now Section 2535, Revised Statutes, 1909, the plaintiff was given a cause or right of action, and a remedy. This right of action has been in her since 1897. It is this identical right of action that she is now attempting to enforce. In other words her present suit is predicated on Section 2535, supra, and is the same suit that she could and should have brought in 1897. Estoppel *in pais* is duly pleaded. Not only so, but well shown in the evidence. In other words, the record tends to show improvements on the land since 1897. A levee was completed in 1896, since which drainage of the land by a drainage plan has been perfected. Many improvements were made since 1889, including the levee. Four or or five houses have been built upon the land, whilst there was but one in 1882. But it suffices to say that the evidence tends to prove improvements made since 1897.

Mrs. Powell should have brought this suit when the right was first given her so as to stop these improvements. Failing to do so she is estopped now from maintaining the very suit she should have brought in 1897. She knew that her grantee would claim the full title from the date of her deed in 1882. She recognized this claim of full title, as is shown by her evidence. She knew that improvements would be made. She knew all these things, and is now fully estopped from maintaining this particular action, because defendants were permitted to act to their detriment. And this is true, although

in a possessory action (not yet accrued under our rulings) she may be able to recover possession.

We are not discussing *laches,* but estoppel *in pais.* We undertook to say that there was a difference between the two doctrines in Kellogg v. Moore, 271 Mo. l. c. 193 et seq. After disposing of the question of laches in our paragraph 2 in that opinion, estoppel *in pais* is disposed of in paragraph 3 of that opinion. So that we hold that plaintiff is clearly estopped from maintaining this particular action, because (eliminating from our tolling statutes Sections 1881 and 1894, supra) the exception as to married women she had an unrestricted right to bring her action, and thereby forestall the improvements thereafter made. At that time she had the clear right not only to sue, but the clear and unobstructed right to contract. At that time she could have contracted as to her alleged reversionary interest, and having the right to contract with reference thereto, and to convey the same, the doctrine of estoppel *in pais* will apply. At that time she had all rights to sue and to contract, save and except the right to sue for possession. We concede that where one cannot sue to protect rights, she can't well be estopped. We further concede that when one cannot be bound by contract she may not be bound by estoppel. But these concessions do not reach this case. In this very case she is trying to enforce a right which could have been enforced from 1897 to the present. As to her, the doctrine of estoppel *in pais* was properly invoked, and if sustained by the facts, should preclude this particular action. Whether she may have a more successful form of action when her husband dies, is another question. It is to be hoped that some Providential act may obviate the harsh rules of law, and save defendant from dire results. But her own conduct estopped her as to this particular action.

Estoppel *in pais* is not dependent upon limitations, nor is it confined to equitable actions. The doctrine was and is recognized in common law courts. [16 Cyc. 682.] In that it differs from laches. [Kellogg v. Moore,

271 Mo. 1. c. 193 et seq.] Estoppel *in pais* may be set up as a defense in actions at law as well as in equity. [16 Cyc. 725.] Nor is this all. The doctrine goes to the *remedy* which many invoked, as well as to the right. [16 Cyc. 722.] We emphasize this, because the conduct of the plaintiff in this case has justified the invocation of estoppel *in pais,* as to the remedy, i. e. this particular suit. So I conclude that the judgment *nisi* in this suit was well within legal bounds, whatever may be the result of a future possessory action, and irrespective of any statute of limitations. The judgment should be affirmed and I so vote.