**Albert C. OPPERMAN, (Plaintiff) Respondent,**

v.

**Truman LA BROT and Virginia LaBrot, (Defendants) Appellants.**

No. 29103.

St. Louis Court of Appeals. Missouri.

Nov. 15, 1955.

Rehearing Denied Dec. 9, 1955.

Melvin Englehart, Fredericktown, for appellants.

Robert I. Meagher, Schnapp & Thomasson, J. B. Schnapp, Fredericktown, for respondent.

WOLFE, Commissioner.

This is an action in ejectment to recover from the defendants two adjoining tracts

of land. The suit is in two counts. The first count seeks recovery of a tract containing five acres and the second count seeks recovery of a small adjoining tract to the east upon which a frame garage had been constructed by the plaintiff. A jury having been waived, the trial was to the court and resulted in a judgment in favor of the plaintiff on count one and in favor of the defendants on count two. The defendants appealed from the judgment against them on count one but the plaintiff did not appeal as to the second count in which the defendants prevailed.

There consequently remains in the case just one disputed piece of land which contains five acres. It is part of a larger tract of land leased by E. C. Lanpher and Pattie B. Lanpher, his wife, to Albert C. Opperman and B. Lanpher Opperman, his wife. The lease bears the date of August 28, 1940, and it is for a term of forty years. It covers a strip of land 534 feet wide and is a part of the west half of the southeast quarter of the southwest quarter of a section of land in Madison County, Missouri.

The lessors, E. C. Lanpher and Pattie B. Lanpher, were the father-in-law and the mother-in-law of Albert C. Opperman, one of the lessees, and of course B. Lanpher Opperman, his wife, the other lessee, was their daughter. During the lifetime of both lessors B. Lanpher Opperman died leaving Albert Opperman as the sole lessee.

The land was a part of a farm upon which Mr. Lanpher and his wife lived, and the portion leased by them to Opperman and his wife was used by Opperman as a silver-fox farm. All of his buildings and pens were on the southern part of the tract which covered an area of about 11½ acres. The rest of the leased area to the north consisting of 5 acres was rough and unplanted ground which Opperman used as a place to burn trash and bury foxes. These 5 acres adjoined the barn lot of the Lanpher farm.

In 1947 E. C. Lanpher died and by will left his farm to his daughters with a life estate to his surviving wife. One of the surviving daughters is Virginia LaBrot. She and her husband, Truman LaBrot, are the defendants herein.

Since 1945 Truman LaBrot helped with the farming on the Lanpher farm and in 1950 he and his wife, Virginia LaBrot, moved to the farm and lived with Mrs. Lanpher, the widowed life tenant.

As to the foregoing evidence there appears to be no dispute, but the LaBrots claim that Opperman abandoned the five acres in dispute in 1941 and that the lessors and their successors have exercised control of them since that time and that the LaBrots have used the five acres in connection with their farming of the Lanpher place. The lease was entered on the tax books of the county and Opperman paid taxes on an estimated ten acres.

Opperman testified that no one had ever questioned his right to use the five acres to the north until 1952, and that although all of his fox pens were south of the five acres it was necessary in the proper operation of a fox farm to control the land around the pens. He had resided on the leased property since 1940 and had kept hunters off the five acres. He said that there was no fence around the land in question until 1952 and that he had hauled brush and stumps from the south 11 acres to a brush pile he had formed on the north 5 acres. He said that in 1943 or 1944 E. C. Lanpher, lessor, asked if he could keep his mules on the property and with the permission of Opperman Lanpher's mules were there for about six months. Opperman produced other witnesses who testified that there was no fence around the 5 acres.

In April of 1952 Virginia LaBrot came on to the property in question and untied a horse that Opperman had tethered there and she led the horse off to the south. It was then that she asserted control over the 5 acres and told Opperman that he had no right upon it.

The defendants stated that the land in question was of practically no value except to allow stock to run upon it. There is no pasturage there. They said that the 5 acres had always been fenced off. Truman La-

Brot said there had been a barbed wire strung across a creek and around some part of the area. There was also a statement that the fence was down and another statement that there were two or three wires on it. They said that Opperman did not use the land and Virginia LaBrot said that she did not think the lease was right.

Mrs. Lanpher testified that Opperman never used the land in question and that she and her husband from the date of the lease had from time to time run livestock into the area. She also testified that Opperman said that he did not want the lot but this was denied by Opperman.

The county surveyor surveyed the area covered by the lease and on behalf of the plaintiff prepared a plat of the land. The court found the survey to be correct and directed that it be made a part of the decree. One of the points raised has to do with the survey and the evidence regarding it will be more fully discussed in connection with that point.

This is substantially all of the evidence upon which the court decreed that Opperman was entitled to recover the land from the defendants and was awarded $1 damages for the wrongful withholding of it. As stated, there was a judgment on behalf of the defendants on count two of the petition. The court assessed the costs of the case equally between the parties.

 Some question has been raised as to the weight to be accorded the findings of the trial court upon appellate review of cases tried by the trial court without the aid of a jury. There need be no question about this, for it is settled by Section 510.310, subd. 4 RSMo 1949, V.A.M.S., and the appellate court will review the case upon both the law and the evidence as in suits of an equitable nature. The judgment will not be set aside unless clearly erroneous, and due regard will be given to the opportunity of the trial court to judge the credibility of the witnesses. Hart v. T. L. Wright Lumber Co., 355 Mo. 397, 196 S.W.2d 272; Personal Finance Co. of St. Louis v. Endicott, Mo.App., 238 S.W.2d

51; In re Diehl's Estate, Mo.App., 239 S. W.2d 523.

 It is contended that the finding of the trial court is against the evidence and that the court should have held that Opperman had abandoned the property to the possession of defendants' predecessors in title. It should be noted that the title of the LaBrots is not clearly apparent as the will of Mr. Lanpher, Mrs. LaBrot's father, was not introduced in evidence. She claimed to be a trustee for her mother and the case was tried upon the theory that she held some title other than remainderman, so we assume that she did. The only claim that she asserts is that Opperman abandoned the five acres of land in question and that the lessors took over its use and occupancy. The plaintiff's right of possession rests upon a lease which plainly covers a strip of land 534 feet wide and 1,355 feet in length, embracing within it the disputed 5 acres, and in order for the defendants to prevail on the theory of a surrender of the lease there must be both an abandonment by the lessee and an acceptance thereof by the lessors. 51 C.J.S., Landlord and Tenant, § 125, p. 719; Powell v. Bowen, 279 Mo. 280, 214 S.W. 142; St. Louis-San Francisco Ry. Co. v. Dillard, 328 Mo. 1154, 43 S.W.2d 1034; Schulte v. Haas, 224 Mo.App. 365, 287 S.W. 816; Babcock v. Rieger, Mo.App., 76 S.W.2d 731.

 There was a direct conflict in the evidence on both the question of abandonment and the acceptance of the property, and consequently the question was one of fact to be determined by the trier of the facts. The findings of the trial judge appear to be amply supported by the evidence and under the announced rule of review should not be disturbed.

 The appellants contend that the survey by the county surveyor, which was introduced in evidence by the plaintiff, is not a legal survey. They state that there was no compliance with Section 60.290 RSMo 1949, V.A.M.S., relating to the re-establishment of decayed or destroyed section corners. All of appellants' argument is predi-

cated upon the theory that the surveyor found no corner of the section. The witness during his testimony about the survey stated that he ran his lines from the northwest corner of the section. He was asked if he found the northwest corner of Section 8, and his answer was, "Yes, we did." On cross-examination he was asked: "When you arrived at what you thought was the northwest corner of the Section you found what you took to be a Section corner, is that right?" to which the witness answered, "Yes." He also testified that he used government field notes to check the lines that he ran. From the foregoing, which was not contradicted by the surveyors called by the defendants, it appears that the statute relating to lost section corners has no application to the facts before us. In relation to that statute the Supreme Court stated in Simpson v. Stewart, 281 Mo. 228, 219 S.W. 589, loc.cit. 590:

"* * * the statute can have no application where the original boundaries are known or can be ascertained. Before it can be invoked it must appear that a corner is not merely obliterated, but lost; that is, that its locus cannot be determined either from the plat and field notes of the original survey, or by any competent extrinsic evidence."

It is also contended that the court erred in referring to the survey in its judgment in that the plat included more land than was covered by the issues tried. The parts of the judgment relating to the land involved are as follows:

"All that part of the Southeast Quarter of the Southwest Quarter of Section 8, Township 32, North, Range 7 East, described as beginning at the northwest corner of the said Southeast Quarter of the Southwest Quarter of said Section 8; thence east along the north line of said Southeast Quarter of the Southwest Quarter the distance of 534 feet; thence South 440 feet; thence in a northwest direction along a fence 543 feet, more or less, to the west line of said Southeast Quarter of the Southwest Quarter; thence north along the West line of said Southeast Quarter of the Southwest Quarter 383 feet to the point of beginning."

The recital of the judgment continues with a finding:

"that the survey of the said real estate described in Count I of the plaintiff's first amended petition by Joseph A. Reilly is correct and said survey is shown in Plaintiff's Exhibit No. 5, introduced in evidence in this cause and said survey is hereby incorporated into and made a part of this judgment."

■■ A judgment should describe the property adjudicated therein with reasonable certainty so as to enable the sheriff, without other evidence, to execute his writ of possession. Tillman v. Hutcherson, 348 Mo. 473, 154 S.W.2d 104. It is admitted that the first quoted section of the judgment properly describes the land, but it is contended that since the survey plat included the area around the disputed 5 acres the judgment went beyond the issues. The obvious intent of the judgment was to approve the plat only as to the land in controversy which is clearly outlined by the survey mentioned. The judgment therefore is not erroneous.

For the reasons stated, it is the recommendation of the Commissioner that the judgment be affirmed.

PER CURIAM.

The foregoing opinion of WOLFE, C., is adopted as the opinion of the court.

The judgment of the circuit court is accordingly affirmed.

ANDERSON, P. J., MATTHES, J., and SAM C. BLAIR, Special Judge, concur.