CHARLES A. HUBBARD and WALTER P. HUB-
    BARD, Appellants, v. JOSEPH W. KEEN and
    ANNA KEEN.

In Banc, Febuary 2, 1923.

1. **LACHES: Estoppel in Pais: Married Woman: Delay by Heirs to Quiet Title: Possessory Right of Husband.** Estoppel *in pais* cannot

be imputed to a woman under the disability of coverture. Where a woman was under coverture at the time she acquired title to land in 1866; her husband, under his marital rights at common law, acquired prior to the Married Woman's Act of 1889, was entitled to possession, and so long as the marriage status continued she was not required to bring a possessory action, and no duty developed upon her heirs during his life to bring such an action or one to quiet title, and the defense of laches, invoked as an estoppel *in pais*, is not made available by the fact that she undertook in 1868, by a deed defectively acknowledged, to convey the land to defendants' ancestors, who with their grantees have since, with the knowledge of the heirs, been in possession and made valuable improvements.

2. **LIMITATIONS: Amendment of 1917: Omission of Words "Or Married Woman": Application.** The amendment of 1917 (Laws 1917, p. 205) which omitted the words "or a married woman" from present Section 1307, did not make inapplicable the disability of coverture of a woman who died in 1916.

3. ———: **Suit by Heirs Within Three Years After Death of Husband: Insanity of Wife.** Where a married woman acquired title to real estate in 1866, and, by a deed defectively acknowledged, conveyed it in 1868, and defendants through *mesne* conveyances from her grantee have since been in possession, and her husband died in 1912 and she died in 1916, the suit of her heirs, to quiet title and in ejectment, begun in 1920, is barred by Sections 1307 and 1310, Revised Statutes 1919, requiring suit by the heirs to be begun within three years after her death. Her coverture was removed by her husband's death in 1912, and she then became entitled to maintain a suit to recover possession, and an action begun by her heirs more than four years after her death in 1916 is barred, although she became insane in 1884 and so continued until the time of her death.

4. ———: ———: **Two Years Limitation.** Where plaintiffs' action is barred by the limitation of three years mentioned in Sections 1307 and 1310, the construction of the limitation of two years defined in Section 1312 is unnecessary.

Appeal from Greene Circuit Court.—*Hon. Guy D. Kirby,* Judge.

AFFIRMED.

*A. S. Cowden* and *G. A. Watson* for appellants.

(1)   The deed from Emily F. Hubbard and her husband, W. D. Hubbard, on March 12, 1868, not being acknowledged according to the law in force at that time, while sufficient to convey the life estate of her husband, was absolutely void as to her.   Powell v. Bowen, 214 S. W. 142; Bagby v. Emberson, 79 Mo. 129; Hoskinson v. Adkins, 77 Mo. 540; Rivard v. Railroad, 257 Mo. 142; Jones v. Lumber Co., 223 S. W. 63.   (2)   The so-called deed of ratification made by these plaintiffs to McCluer, describing part of the lands embraced in the void deed of. Emily Hubbard, but not mentioning the land in this suit, could in no way validate the void deed.   Its only effect. on these plaintiffs would be to stop them from claiming the land described in the McCluer deed.

*G. W. Goad* and *Dan M. Nee* for respondents.

(1)   Plaintiffs are barred from recovery in this case under Act of 1917, Laws 1917, p. 204, now Sec. 1312, R. S. 1919.   (a)   For the reason that Walter D. Hubbard, who was one of the grantors in the deed in controversy and whose wife, Emily F. Hubbard, failed to properly acknowledge same, owned a legal title or estate in said land.   (b)   Because said Walter D. Hubbard by virtue of the marital relation was owner and holder of a freehold estate in the land of his wife Emily F. Hubbard. Powell v. Bowen, 214 S. W. 146; Nicholas v. Hobbs, 197 S. W. 258; Donivan v. Griffin, 215 Mo. 163; DeHatre v. Edmonds, 200 Mo. 268; Robards v. Murphy, 64 Mo. App. 90.   (2)   Under the evidence in this case plaintiffs are estopped from recovery.   Bigelow on Estoppel, pp. 397-399; Steele v. Culver, 158 Mo. 138.

*G. G. Lydy, V. O. Coltrane, Allen & Allen* and *Barbour & McDavid* for *amici curiae.*

(1)   Plaintiffs cannot recover in this case without accounting to defendants for the money paid to their ancestor for a deed made by her, alleged to be void, which

deed described the identical land here in controversy along with other lands, and as a prerequisite to recovery of the land they must likewise account for improvements and interest on the purchase price. Rivard v. Railroad, 257 Mo. 135, 169; McReynolds v. Grubbs, 150 Mo. 352, 365; Bagby v. Emberson, 79 Mo. 139; Shroyer v. Nickell, 55 Mo. 264. (2) The answer in this case praying for a return of the purchase money and cost of improvements is in the nature of an equitable counterclaim, and is tried in the ejectment suit and not under the statute after judgment in the ejectment suit. This because the defendant in this case is not a stranger to the title asserted by plaintiff, since all parties deraign title from a common source, to-wit, Emily F. Hubbard. Henderson v. Langley, 76 Mo. 226; Hannibal & St. J. Railroad v. Shortridge, 86 Mo. 662; Foote v. Clark, 102 Mo. 394, 408; Hutchinson v. Patterson, 226 Mo. 174, 182; Connecticut Mutual Life Ins. Co. v. Carson, 186 Mo. App. 222. (3) Plaintiffs cannot ratify in part the deed of their mother, holding the entire consideration, and at the same time repudiate a part of such deed. In 1898 with full knowledge of the alleged defect in the acknowledgment of the deed by their mother, these plaintiffs, retaining the entire consideration, executed a deed to a portion of the land conveyed in their mother's deed and in such deed ratified and confirmed the deed made by their mother. This ratification clause is additional to the granting clause and other necessary clauses in the deed and is in its terms broad and general and constitutes a ratification in toto of their mother's deed. Estes v. Reynolds, 75 Mo. 563; Hart v. Handlin, 43 Mo. 171. A person cannot accept and reject the same instrument, or, having availed himself of it as to a part, defeat its provisions in any other part. This applies to deeds, wills and all other instruments whatsoever. Fox v. Windes, 127 Mo. 502, 512. It would be unconscionable to allow the retention of the consideration received for the land and, after they have ratified the deed conveying the land, with full knowledge of the defect, recover the land itself after the

lapse of more than half a century and after plaintiffs have stood by and have seen defendants and their grantors pay full consideration therefor and make improvements thereon. Hubbard v. Slavens, 218 Mo. 598, 615. (4) Sec. 1310, R. S. 1919, bars plaintiffs from recovery herein because their mother, Emily F. Hubbard, died in 1916, and this suit was not brought within three years after her death. Reed v. Painter, 145 Mo. 341, 355. (5) The plaintiffs are barred from recovery in this case by virtue of the provision of the Act of 1917, Laws 1917, p. 204, now Sec. 1312, R. S. 1919. (6) Plaintiffs are estopped from recovering this land in this action by their own conduct and acts in this: (a) By their solemn deed made in 1898 wherein they specifically ratify and confirm the deed which they now assert was void. (b) By the act of W. P. Hubbard, one of the plaintiffs, in filing in a court of record, to-wit: the Probate Court of Greene County, in 1916, over his own signature, duly sworn to, a solemn instrument wherein he stated that his mother, Emily F. Hubbard, then deceased, owned no real estate, which instrument he filed with full knowledge of the defect of which he now complains. (c) By the conduct of C. A. Hubbard, one of the plaintiffs herein, in standing by through all these years with knowledge that this property was being disposed of and improved and making no claim therefor or objection thereto. Hubbard v. Slavens, 218 Mo. 598, 615, 620.

WALKER, J.—This is a suit brought June, 1920, under Section 1970, Revised Statutes 1919, to quiet title to certain land in Greene County, and in ejectment. Upon a trial by the court, there was a judgment finding that the title was in the defendants and denying the plaintiffs' right of recovery. From this judgment, they have appealed.

The petition in each of the causes of action pleaded embodies the conventional allegations required by the statute and recognized by our procedure.

297 Mo.—3

The answer denies plaintiffs' right to recover and alleges that the defendants own the land and are in possession of the same; that Joseph Powell was the common source of title; that defendants claim title through Martha E. Powell; that plaintiffs claim through their mother, Emily Hubbard, who, in conveying the land with her husband, Walter D. Hubbard, in March, 1868, failed to be examined and to acknowledge the deed separate and apart from her husband; that the purpose of this deed was to exchange the land for certain lands then owned by Martha E. Powell, which lands have ever since been in the possession of the heirs of Walter D. and Emily Hubbard; that Martha E. Powell and her grantees, including the defendants, have ever since said conveyance been in the possession under claim of ownership of the land now sued for; that since that time the plaintiffs have stood by and have permitted Martha E. Powell and her grantees, including the defendants, to pay taxes and improve the property and to permit same to be sold and conveyed a number of times, and have always disclaimed ownership therein and have ratified and confirmed their mother Emily Hubbard's deed and that of her husband by a deed made by plaintiffs and their father Walter D. Hubbard in November, 1898; that plaintiffs are estopped and barred by the Statute of Limitations; and that they have failed to file any notice claiming title to said lands as required by the act approved April 10, 1917 (Laws 1917, p. 204), and are barred by reason of said failure.

Defendants pray that plaintiffs be enjoined from taking possession of said land and that they be required to specifically perform the contract made between their mother and Martha E. Powell for the exchange of the lands or that they restore the eighty acres of land and four hundred dollars in money received at the time of said exchange of lands between Martha E. Powell and their mother, Emily Hubbard; that defendants be adjudged to be the owners of the land sued for and that

plaintiffs be barred and estopped from claiming any interest therein.

A reply was filed but it is not preserved.

Plaintiffs are the sons and sole heirs of Emily Hubbard, who died in 1916, and of Walter D. Hubbard, her husband, who died in 1912. When this suit was filed, the plaintiffs were each over fifty years of age. Their mother was the daughter of Joseph Powell, who died testate in 1847, seized of the property in question and other lands which he devised to his wife for life and in equal shares in remainder in fee to his children Emily, Mary, Maria and Joseph. The testator's widow died prior to 1866, and his heirs were all of full age and married before any of the deeds herein mentioned were made. These deeds were as follows: December 8, 1866, two of the heirs, Joseph and Mary, the latter married to M. J. Hubble, who joined in the deed, conveyed their undivided interest to Walter D. Hubbard, the husband of Emily, and to Nathan P. Murphy, the husband of Maria; March 12, 1868, Maria and her husband, Nathan P. Murphy, conveyed their undivided interest to Emily Hubbard. March 12, 1868, Walter D. Hubbard and his wife Emily conveyed said land by warranty deed to Martha E. Powell, the wife of Joseph Powell. The acknowledgment of Emily Hubbard failed to recite that she was examined and acknowledged the deed separate and apart from her husband. November 18, 1868, Joseph Powell and his sister Mary conveyed their undivided interest to Maria Murphy and Emily Hubbard, reciting that their deed was made to correct a former deed (not preserved in the record) of the same land to the same parties. When the conveyance by Emily Hubbard and her husband was made to Martha E. Powell, Emily owned one-half of the land—one-fourth under her father's will and one-fourth under the deed from Nathan P. Murphy to her; Walter D. Hubbard, her husband, owned a one-fourth interest in the land under the deed of December 8, 1866, made to him and Nathan P. Murphy; Maria Murphy owned a one-fourth interest under her

father's will, which she had failed.to convey on account
of a defectively executed deed. After receiving the con-
veyance of March 12, 1868, from plaintiffs' mother and
father, Martha E. Powell and the parties claiming under
her took possession of the land, paid taxes on it, im-
proved it, and it was sold and conveyed by them and
others who acquired title thereto from time to time, the
defendants herein being the present title owners and
now in possession of the property. Their title was de-
rived from W. E. Freeman a few years before this suit
was filed. Prior thereto W. E. Freeman had obtained a
quitclaim deed from Maria Wright, formerly Maria
Murphy, to her one-fourth interest in the land. The in-
terest thus acquired, as well as that conveyed by Walter
D. Hubbard, is held by defendants independent of the
claim of plaintiffs. In 1898 Walter D. Hubbard and the
plaintiffs conveyed one hundred and ten acres of land,
not including the five acres here in dispute, to Milton A.
and James W. McCluer for a consideration of one dollar.
Their deed contained the following recital: "This deed
is made to ratify and confirm the deed heretofore made
by Walter D. Hubbard and his wife to Martha E. Powell,
March 13, 1868."

Emily Hubbard, the mother, became insane in 1884,
and so continued; the remainder of her life being spent
in an asylum, where she died in 1916.

The plaintiff Charles A. Hubbard testified that he
had always lived within two miles of the land and had
never claimed to own any interest in it. He presumed
that the land was being sold. He did not tell the defend-
ant's grantor, Freeman, that he claimed no interest in
the land, but did tell Freeman that he would procure a
quitclaim deed to defendant Keen for nothing. The
other plaintiff, Walter P. Hubbard, lived in St. Louis.
Freeman sent fifty dollars to him for a quitclaim deed,
but he refused to make it and returned the money. Wit-
ness said he knew he had an interest in the land his
mother owned, but did not know the land. Freeman tes-
tified that he had a talk with Charles A. Hubbard in

April, 1920; that the latter then asserted no title to the land. The defendant Keen testified that after he bought the land, he had a talk with Charles A. Hubbard and the latter told him he made no claim to it. Defendants knew nothing about the deed of ratification made by Walter D. Hubbard and his sons in 1898.

Epitomizing the facts relative to the title to this land as disclosed by the foregoing statement, we find that at the time Emily and Walter D. Hubbard executed the deed to Martha E. Powell, dated March 12, 1868, in controversy in this case, the legal title to the land therein described was held as follows: Emily Hubbard a two-fourths interest; Walter D. Hubbard a one-fourth interest, and Maria L. Murphy a one-fourth interest.

Emily Hubbard acquired her interest as follows: A one-fourth under the will of her father, Joseph Powell, and a one-fourth by the deed from Maria L. and Nathan P. Murphy, by the deed of March 12, 1868. This deed conveyed only the interest of Nathan P. Murphy, but failed to convey, on account of a defective acknowledgment, the one-fourth interest of his wife, Maria L. Murphy.

Walter D. Hubbard acquired a one-fourth interest by the deed from Martin J. Hubble and Mary J. Hubble, his wife, and Joseph M. Powell and Martha E. Powell, his wife, to Nathan P. Murphy and Walter D. Hubbard, dated December, 1866. Defendants, through mesne conveyances, their immediate grantor being W. E. Freeman, acquired the interest of W. D. Hubbard.

Maria L. Murphy acquired a one-fourth interest by devise from her father, Joseph Powell. Defendants acquired the interest of Maria L. Murphy by deed from her under the name of Maria L. White to W. E. Freeman, their grantor, June 17, 1913.

At the close of the testimony, the plaintiffs asked an instruction as follows:

"The court declares the law to be that the act of the General Assembly approved April 10, 1917 (Laws 1917,

page 204), does not apply to the facts in evidence in this cause.'' This instruction was refused, to which plaintiff excepted. No other instructions were asked or given, and the court's finding and judgment was.as stated in favor of the defendants.

I. The doctrine of laches as authorized in the invoking ,of estoppel *in pais* is urged in defense of this action. Emily Hubbard, the source of plaintiffs' title, was under coverture at the time she acquired an interest in the land.

Laches. Her husband, aside from his title in fee to a one-fourth interest therein, was, under his marital rights at common law, entitled to the possession of same and this right became vested in having been acquired prior to the adoption of the Married Women's Act in 1889. This act did not divest him of the right thus acquired, and during its existence the wife was protected from the necessity of bringing a possessory action to recover by reason of his tenure. Her failure to sue, therefore, cannot furnish a basis for the defense of laches as against the plaintiffs. In short, as ruled in numerous cases, estoppel *in pais* cannot be imputed to a woman who rests under the disability of coverture. While she may have been entitled to bring a possessory action after the adoption of the Married Women's Act, or one to determine title under what is now Section 1970, Revised Statutes 1919, after its adoption in 1897 (Laws 1897, p. 74), neither proceeding was necessary to the preservation of her right to assert a claim to the land. The protection thus afforded her under its common-law aspect, without reference to statutes which we will discuss later, was sufficient for her protection. No duty developed upon the plaintiffs as her heirs. Allegations in the answer, therefore, as to plaintiffs' knowledge of defendants' possession of the land, its frequent transfers, with the consequent changes of owners and the improvements made thereon by them, will, in equity, avail nothing as a defense to plaintiffs' right of action. [Mathis v.

Melton, 238 S. W. (Mo.) 806; Jones v. Himmelberger-Harrison Lbr. Co., 223 S. W. (Mo.) 63; Powell v. Bowen, 279 Mo. 280; Lewis v. Barnes, 272 Mo. 377; Same Case, 2nd appeal, 220 S. W. 487.]

II. Aside from the coverture of Emily Hubbard as affecting the rights of plaintiffs in equity, a consideration of the Statutes of Limitations applicable under the facts is vital to the determination of the matter at issue. Except to persons under certain disabilities, the right of action to recover real estate is limited to ten years (Sec. 1305, R. S. 1919). To those under either of such disabilities, the limitation is extended to twenty-four years under Section 1307, Revised Statutes 1919, which is as follows:

Limitations.

"If any person entitled to commence any action in this article specified or to make any entry be, at the time such right or title shall first descend or accrue, either within the age of twenty-one years, or insane, or imprisoned on any criminal charge or in execution upon some conviction of a criminal offense for any time less than life, the time during which such disability shall continue shall not be deemed any portion of the time in this article limited for the commencement of such action or the making of such entry; but such person may bring such action or make such entry after the time so limited, and within three years after such disability is removed; *Provided*, that no such action shall be commenced, had or maintained or entry made by any person laboring under the disabilities specified in this section, after twenty-four years after the cause of such action or right of entry shall have accrued."

A subsequent section (Sec. 1310, R. S. 1919) defines the rights of the heirs or those claiming from one who dies under either of the disabilities designated in Section 1307. It is as follows:

"If any person entitled to commence such action or to make such entry die during the continuance of any

disability specified in Section 1307, and no determination or judgment be had of the title, right or action to him accrued, his heirs, or any person claiming from, by or under him, may commence such action or make such entry after the time in this article limited for that purpose, and within three years after his death, but not after that period.''

Adverse possession will start the running of the statute against one under disability. Such possession begins with the entry into the possession of the land by another than the person under disability or one claiming from such person. Upon the beginning of the adverse possession, the right of action of the person under disability accrues. [Faris v. Moore, 256 Mo. l. c. 131; Boyd v. Weber, 193 Pa. St. 651.]

One of the disabilities designated in what is now Section 1307 is coverture. In 1917 (Laws 1917, p. 205) the words ''or a married woman'' were by amendment omitted from the section. Emily Hubbard, who was under coverture died in 1916 and the rights of those claiming through her are to be determined under the law as then existing. Coverture is, therefore, a disability here entitled to consideration. It will be recalled that the deed upon which this controversy is based was made in 1868 by Emily Hubbard and her husband. The marriage relation continued until 1912, when the husband died. A period of forty-four years in duration, therefore, elapsed from the time the wife's right of action accrued in 1868, when Martha E. Powell took possession of the land, and the death of Walter D. Hubbard. This suit was not brought until June 8, 1920, eight years after Emily Hubbard became discovert and four years after her death in 1916. These facts are ample to bar plaintiffs' right of recovery under the limitations of Sections 1307 and 1310, supra, on the ground of the coverture of their mother, the source of their title.

If, however, the disability of coverture be left out of consideration, the record discloses that Emily Hub-

bard became insane in 1884 and so continued until her death in 1916, or for a period of thirty-two years. It was more than four years after her death that this action was commenced. Not having availed themselves of the time granted by the statutes, plaintiffs' right of recovery is barred. This conclusion does not militate against our ruling in Powell v. Bowen, 279 Mo. 1. c. 294, the suit therein having been brought within the time limited by the statutes here under review.

III. Error is urged in the refusal of the trial court to give an instruction asked by plaintiffs at the close of the testimony declaring that the two-years' Statute of Limitations defined in Section 1312, Re-
Two Years' Limitation. vised Statutes 1919, was not applicable under the evidence, and, hence, could not be considered in the determination of the matter at issue. While this section was specifically pleaded in the answer, its construction is not necessary to a determination of plaintiffs' right of action in view of the bar of the statutes (Secs. 1307 and 1310, supra) above discussed.

The judgment of the trial court should be affirmed, and it is so ordered. *Woodson, C. J., White* and *David E. Blair, JJ.,* concur; *Graves* and *James T. Blair, JJ.,* concur in result; *Ragland, J.,* not sitting.